**Donald C. MacNAUGHTON, et al.**

v.

**Evelyn COSSIN, et al.**

Supreme Judicial Court of Maine.

Argued May 8, 1985.

Decided June 4, 1985.

Daughan Kimmel & Lenkowski, Francis P. Daughan, Paul L. Beach (orally), Wells, for plaintiffs.

Lowry & Platt, Donald G. Lowry (orally), Portland, for Evelyn Cossin.

Verrill & Dana, John W. Philbrick, Paul F. Driscoll, (orally), Portland, for Weare and Cliff House.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

WATHEN, Justice.

In these consolidated cases, plaintiffs, Donald C. and Laura S. MacNaughton, appeal from an order of the Superior Court (York County) granting a motion for summary judgment filed by defendant, Evelyn Cossin, and granting a similar motion filed by The Cliff House and Motels, Inc. (the "Cliff House"), and Kathryn Weare. Plaintiffs argue that the Superior Court erred in finding that no genuine issue of material fact was present in regard to either of the motions for summary judgment. We find no error and deny the appeal.

I.

In the summer of 1983, Mrs. Cossin entered into a listing agreement with the Drown Agency, a real estate agency, granting the agency the exclusive right to sell her house and land for $200,000. After first being listed at a higher price, the property was advertised in a newspaper at $200,000. In September 1983, plaintiffs inquired at the agency about Mrs. Cossin's property. One of the agents, Patrice Des-Rochers Morin, showed plaintiffs the property a number of times. Ms. Morin also showed plaintiffs the exclusive listing agreement.

Several different offers were made by plaintiffs for the property and they were forwarded to Mrs. Cossin through Ms. Morin. Mrs. Cossin explicitly rejected these offers. Finally, on October 8, 1983, plaintiffs made a written, signed offer of $200,-000. After being informed of this offer by Ms. Morin, Mrs. Cossin requested of Ms. Morin that she send the offer to Mrs. Cossin's financial adviser and her lawyer.

Ms. Morin told plaintiffs of Mrs. Cossin's request. In her affidavit submitted in support of Mrs. Cossin's motion for summary judgment, Ms. Morin states that Mrs. Cossin always made it clear that specific pro-

posals "would have to be cleared through her advisors, and I discussed the purchase of her property with the MacNaughtons on such a basis." Further, Ms. Morin's affidavit states that there was no written agreement between plaintiffs and Mrs. Cossin, and "at no time did Mrs. Cossin indicate her unconditional assent to the terms contained in the MacNaughtons' offer."

In his affidavit, Mr. MacNaughton states that "I agreed to all of Mrs. Cossin's requests and those requests were embodied in the contract" executed by plaintiffs on October 8, 1983. Mr. MacNaughton's affidavit continues:

> I was informed by Mrs. Morin, Mrs. Cossin's authorized agent, that Exhibit B [the October 8 offer] ... represented Mrs. Cossin's desires and my wife and I agreed to the purchase of the property on the terms which Mrs. Morin had indicated were acceptable to Mrs. Cossin.

Plaintiffs deposited $10,000 with the Drown Agency. At plaintiffs request, the money remains in the possession of the agency.

Shortly after the October 8 offer, Ms. Weare, an officer of the Cliff House, spoke to Drown agent James D. Waterman about buying Mrs. Cossin's property. Ms. Weare made a written, signed offer of $210,000 cash and made a $20,000 deposit. Ms. Weare and Mrs. Cossin met to discuss the Cliff House offer. On October 21, 1983, the Cliff House and Mrs. Cossin closed on the property. Before the closing, plaintiffs filed a notice of lis pendens giving notice of their complaint for specific performance against Mrs. Cossin.

Plaintiffs' complaint against Mrs. Cossin alleged the existence of a contract for the purchase and sale of Mrs. Cossin's real estate. The complaint alleged that Mrs. Cossin breached the terms of the contract and should be made to specifically perform her duties under the contract.

In February, 1984, plaintiffs filed a complaint against Ms. Weare and the Cliff House, alleging intentional interference with the contract between plaintiffs and Mrs. Cossin. Ms. Weare and the Cliff House filed a motion for judgment on the pleadings and, in the alternative, a motion for summary judgment. Mrs. Cossin also moved for summary judgment. In support of their motions for summary judgment, defendants submitted the affidavits of Mr. Waterman and Ms. Morin.

Plaintiffs filed a memorandum in opposition to Ms. Weare's and the Cliff House's motion for summary judgment. The memorandum raised for the first time arguments based on promissory estoppel. In opposition to the motions for summary judgment, plaintiffs submitted the affidavits of Mr. MacNaughton, and his attorneys.

In November, 1984, the Superior Court granted the motions for summary judgment in favor of defendants. The Court found no contract, no enforceable oral promise, and no tortious interference with contract. From this decision, plaintiffs appeal.

## II.

■  With respect to their claims against Mrs. Cossin, plaintiffs have abandoned any theory of recovery based on the formation of a written contract, the only theory advanced in the Cossin complaint. The Superior Court correctly ruled that the listing agreement entered into by Mrs. Cossin and the Drown Agency did not constitute an offer that could be accepted by prospective buyers.

In support of their theory of recovery on promissory estoppel, plaintiffs rely on *Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me.1978), in which the Court adopted the doctrine of promissory estoppel as set forth in the Restatement (Second) of Contracts § 90:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement

of the promise. The remedy granted for breach may be limited as justice requires.

Plaintiffs reliance on the doctrine of promissory estoppel is unavailing. The record before us is devoid of any suggestion of a promise made by Mrs. Cossin upon which plaintiffs could rely. The doctrine of promissory estoppel requires as a predicate, the existence of a promise that would otherwise be unenforceable. Plaintiffs argue that the affidavits before the Court must be interpreted to mean that Mrs. Cossin had agreed to the terms of the October 8 purchase and sale agreement signed by plaintiffs, and that she had impliedly promised to sign the October 8 agreement. In fact, the affidavits contain no indication that Mrs. Cossin ever promised to sign the October 8 agreement. In addition, even assuming that Mrs. Cossin would be bound by representations made to plaintiffs by Ms. Morin, the affidavits do not support the assertion that Ms. Morin told plaintiffs that Mrs. Cossin had promised to sign the October 8 agreement.

### III.

Plaintiffs' complaint against Ms. Weare and the Cliff House alleges tortious interference with contract. First, plaintiffs have failed to create a factual issue as to the existence of a contract. Beyond that defect, however, is the absence of any evidence in the record to suggest that Ms. Weare or the Cliff House used fraud, intimidation, or undue influence in their dealings concerning Mrs. Cossin's property. *See DiPietro v. Casco Northern Bank*, 490 A.2d 215, 219 (Me.1985); *MacKerron v. Madura*, 445 A.2d 680, 682 (Me.1982). Therefore, the Superior Court committed no error in granting Ms. Weare and the Cliff House summary judgment, even assuming that the law imposes liability for tortious interference with the relationship created between the promisor and promisee by the application of promissory estoppel.

The entry is:

Judgments for the defendants affirmed.

All concurring.