**1997 ME 43**

## PANASONIC COMMUNICATIONS & SYSTEMS CO.

v.

## STATE of Maine, DEPARTMENT OF ADMINISTRATION, BUREAU OF PURCHASES.

Supreme Judicial Court of Maine.

Argued Oct. 9, 1996.
Decided March 13, 1997.

---

Andrew M. Horton (orally), Seth W. Brewster, Verrill & Dana, Portland, for plaintiff.

Andrew Ketterer, Attorney General, H. Cabanne Howard, Asst. Atty General (orally), Augusta, for defendant.

Before WATHEN, C.J., and GLASSMAN, RUDMAN, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Panasonic Communications & Systems Co. ("Panasonic") appeals from the judgment entered in the Superior Court

(Kennebec County, *Atwood, J.*), pursuant to M.R.Civ.P. 56(c), denying its motion for a summary judgment and granting a summary judgment for the State of Maine's Department of Administration, Bureau of Purchases ("the State"). Panasonic contends that the trial court erred in ruling that a letter agreement between OASYS, Inc. ("OASYS"), Panasonic, and the State was not a valid contract, and in finding that Panasonic was not a third-party beneficiary of the contract between OASYS and the State for the supplying of photocopy services. Panasonic also contends that the court erred in granting a summary judgment to the State on Panasonic's promissory estoppel claim because it was not properly before the court on the motion for a summary judgment or, in the alternative, because there remains a factual dispute over whether Panasonic detrimentally relied on the State's promise to send payments to an escrow account for its benefit. We disagree with Panasonic's contentions and affirm the summary judgment.

*Background*

[¶ 2] In January 1990, the State executed a purchase order contract with OASYS to lease photocopy equipment, supplies, and services in return for monthly payments based on the amount of photocopies made. Although Panasonic was not a party to this agreement, OASYS purchased the necessary copiers from Panasonic in February 1990 on credit and agreed to make monthly payments to Panasonic from the funds OASYS received from the State. That agreement required OASYS to establish an escrow account in which Panasonic would have a security interest and to make "arrangements with the State of Maine to deposit all such copier payments only in such account." As the Escrow and Pledge Agreement dated March 23, 1990, between OASYS, Panasonic, and Key Bank recites: "By letter dated February 7, 1990 ..., Panasonic agreed to sell to OASYS, and OASYS agreed to buy, certain plain paper copiers in connection with the lease or rental of such copiers to the State of Maine...." [1]

[¶ 3] OASYS also borrowed $100,000 from Key Bank to finance its venture, and both Panasonic and Key Bank retained security interests in the funds OASYS received from the State. The Escrow and Pledge Agreement between OASYS, Panasonic, and Key Bank states in pertinent part:

As additional security for the payment of the Monthly Billing Amount and for any obligations owed to Panasonic as a result of the assumption by Panasonic of any service obligations of OASYS to the State of Maine, OASYS has agreed to grant to Panasonic a security interest in all accounts and contract rights arising from the Purchase Order [contract between OASYS and the State]. OASYS has further agreed to cooperate in establishing ... a separate escrow pledge account, ... for the purpose of accepting all payments for copiers from the State of Maine pursuant to the Purchase Order ..., and has agreed to grant Panasonic a security interest in the Escrow Funds.

The State was not a party to this Escrow and Pledge Agreement.

[¶ 4] On May 3, 1990, three days after OASYS was to have delivered the photocopying machines to the State, OASYS President Kevin Cloutier called Bureau of Purchases Director Richard B. Thompson, Jr. to arrange the escrow payments with the State. According to Thompson, Cloutier told him that he needed written assurance that the State would make the monthly payments to the escrow account to protect the interests of Panasonic before OASYS could secure the necessary financing and access to the Panasonic machines. Panasonic asserts that its plea for this assurance was due to the fact that by early May

the agreement between the State and OASYS was on the brink of unraveling. OASYS's suppliers, including Panasonic, were concerned about OASYS's ability to pay and, consequently, whether they would be paid. Panasonic was willing to rescue the agreement between OASYS and the State—and supply copiers to OASYS for the benefit of the State—as long as the

---

1. A copy of the February 1990 letter agreement between Panasonic and OASYS is cited as Exhibit A of the Escrow and Pledge Agreement, but it is not in the record.

State promised that Panasonic would be paid.

These assertions about an unanticipated crisis contradict the terms of the March Escrow and Pledge Agreement indicating that payment by the State into an escrow account was a condition of Panasonic's performance almost from the beginning of its contractual relationship with OASYS.

[¶ 5] On May 3, subsequent to Cloutier's call to Thompson, the State signed a letter agreement dated March 23, 1990, which provides that the monthly payments would be made payable to OASYS but sent to the escrow account rather than to OASYS directly. The letter agreement stated:

As inducement to both Panasonic and Key Bank for assistance in this project, OASYS has granted to [them] a security interest in the funds due under the above-referenced purchase order.... In connection with this, an escrow account has been established at Key Bank.

Although the letter agreement specified that the State could "request Panasonic to assume the servicing obligations" should OASYS fail to perform the contract for the photocopy services, Thompson expressly deleted that paragraph before signing the letter.

[¶ 6] To facilitate the payments to the escrow account, OASYS was to affix a label to each invoice indicating that payment was to be made to the escrow account. OASYS failed to place such labels on the April and May 1991 invoices, and the State therefore issued those two checks directly to OASYS in the total amount of $170,595.89. According to Thompson, the State official responsible for issuing the checks was contacted by an OASYS staffer, "who asked to pick up each of the two checks in question personally." Succeeding payments were made to the escrow account until OASYS declared bankruptcy under Chapter 7 of the U.S. Bankruptcy Code and became unable to perform the balance of the contract.

[¶ 7] In 1992 Panasonic sued OASYS to collect funds in excess of $1.5 million. In the bankruptcy proceeding Panasonic obtained funds that had been held in the escrow account as well as an assignment from Key Bank of its interest in the escrow account.

The two payments sent directly to OASYS, however, were never deposited into the escrow account. Panasonic's unsatisfied claim against OASYS still exceeds $1 million. In November 1994, Panasonic filed this breach of contract action, alleging that the State's failure to make the April and May 1991 payments to the escrow account was a breach of the letter agreement which damaged it in the amount of $170,595.89.

[¶ 8] Panasonic moved for a summary judgment. The State also moved for a summary judgment and raised the defense of lack of consideration. In its reply brief Panasonic notified the court of its intent to move for leave to amend its complaint with a claim for promissory estoppel, which motion it filed along with an amended complaint in September 1995. Panasonic supported its request that the trial court consider the promissory estoppel claim with its assurance that there would be no undue delay. Instead of opposing Panasonic's motion to amend, the State argued against the application of estoppel on the merits at the summary judgment motion hearing.

[¶ 9] In its order the court simultaneously granted Panasonic leave to amend its complaint, denied Panasonic's motion for a summary judgment and granted a summary judgment for the State, ruling on both the breach of contract and promissory estoppel claims. *See* M.R.Civ.P. 56(c). The court held that the letter signed by OASYS, Panasonic, and the State was not a valid contract because the State's promise to make payments to an escrow account lacked consideration from either OASYS or Panasonic; that the allegedly modified contract between OASYS and the State similarly was invalid and therefore created no obligation to a third-party beneficiary; that the court could consider a claim for promissory estoppel first raised in a memorandum in opposition to a motion for a summary judgment; and that because Panasonic failed to establish that the State's promise to pay the escrow account induced its detrimental reliance, the State could not be estopped from denying any obligation to Panasonic. We agree with these holdings.

*Standard of Review*

[¶ 10] In reviewing an appeal from a grant of a summary judgment, we view the evidence in the light most favorable to the party against whom judgment was entered and review the trial court's decision for errors of law. *Gonzales v. Commissioner, Dep't of Public Safety,* 665 A.2d 681, 682 (Me.1995). When there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, we affirm. *Id.* at 682–83. The trial court does not decide any disputed factual questions. It determines only whether the record before it generates a genuine issue of material fact. *Casco N. Bank, N.A. v. Edwards,* 640 A.2d 213, 215 (Me.1994).

*The Contract Claims*

■ [¶ 11] The letter agreement signed by Panasonic, OASYS, and the State did not create a contractual relationship between Panasonic and the State because neither OASYS nor Panasonic provided the necessary consideration. *Whitten v. Greeley–Shaw,* 520 A.2d 1307, 1309 (Me.1987). OASYS had a legal obligation to supply the State with photocopy services as of January 1990, and it provided no new consideration in exchange for securing the State's agreement to make payments to the escrow account. *See, e.g., Wescott v. Mitchell,* 95 Me. 377, 383, 50 A. 21 (1901) (mere agreement by one party to perform an existing contractual obligation is not a valid consideration for a new promise by the other party).

■ [¶ 12] Before a party's performance may constitute consideration, there must be a bargained-for promise in exchange for which consideration is given. *Whitten,* 520 A.2d at 1310 (allegations of lack of consideration draw attention to the bargaining process and the requirement that a party's performance or promise to do something cannot constitute consideration if it was not sought after by the other party and motivated by the latter's request). Here, the State never bargained for Panasonic's performance. Rather, OASYS bargained for that performance as indicated by references in the record to the February 1990 letter agreement between it and Panasonic, conditioned upon OASYS making arrangements with the State for payment, and the fact that Panasonic was not a party to the original contract between OASYS and the State. To the extent that there was a promise by the State regarding the escrow payments, it ran from the State to OASYS, which benefitted because those payment arrangements enabled OASYS to keep the business transaction afloat. The State never promised anything to Panasonic directly, nor did it require or direct OASYS to make or keep Panasonic as its supplier. Indeed, when given the opportunity in the letter agreement to deal directly with Panasonic, the State explicitly declined that opportunity. Where there is no bargain—as there was none between the State and Panasonic—there can be no consideration. *Whitten,* 520 A.2d at 1310 (citing *Zamore v. Whitten,* 395 A.2d 435, 444 (Me.1978), *overruled on other grounds by Bahre v. Pearl,* 595 A.2d 1027 (Me.1991)); *see also Restatement (Second) of Contracts* ("*Restatement*") § 71 cmt. e (1981) ("It matters not from whom the consideration moves or to whom it goes. *If it is bargained for and given in exchange for the promise,* the promise is not gratuitous." (emphasis added)).

■ [¶ 13] Panasonic also cannot recover as a third-party beneficiary of a modified contract between the State and OASYS because, as noted, there was no consideration flowing from OASYS to support the modification. Although a third party's performance can supply consideration in particular circumstances, *see Maine Mortgage Co. v. Tonge,* 448 A.2d 899, 902 (Me.1982) (any contract may be modified as long as the new agreement itself complies with the requirements of a valid contract), Panasonic's performance does not supply that consideration because it was never bargained for by the State. *Whitten,* 520 A.2d at 1310 (consideration must be sought after by the promisor and motivated by his request). Where there is no consideration, there can be no contract, and therefore no third-party recovery on that contract.[2]

2. Whether Panasonic could be considered an intended beneficiary of any contract between OA-

[¶ 14] Panasonic's contract claims also fail, in part, due to the coercive nature of OASYS's approach to the State in May 1990. If the State wanted delivery of the photocopiers three days *after* they were already due, it had to promise to make payments to the escrow account. State Director of Purchases Thompson recalls being contacted at the eleventh hour by OASYS President Cloutier, who

> indicated that he had a letter setting forth the necessary assurances which he wanted me to sign immediately, and that if I did not do so, he would be unable to provide delivery of the machines, [and] the State would be without any copying machines. He then sent a courier with the letter to my office. I indicated that I would sign the letter with the exception of a paragraph agreeing that the State of Maine would assign the contract to Panasonic in the event that OASYS was unable to perform it. I therefore struck that paragraph from the letter, added one amendment of my own, and signed it.

This threat of non-performance by OASYS provides a classic example of what the law seeks to deter by refusing to allow performance of an existing obligation to satisfy the requirement of consideration for an additional promise by a promisor. *See Restatement* § 73 ("Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration; ...") & cmt. c ("[T]he lack of social utility in such bargains provides what modern justification there is for the rule that performance of a contractual duty is not consideration for a new promise.").

### *Promissory Estoppel*

[¶ 15] Panasonic asserts that the court's ruling on its promissory estoppel claim was premature because the issue was not properly before the court on the motion for a summary judgment; that the parties were never given the opportunity to develop a factual record on the issue; and that the court had not yet acted on its motion for leave to amend the complaint to allege promissory estoppel when the court heard argument on the motion for a summary judgment on its other claims. Thus, Panasonic continues, it briefed and prepared its summary judgment motion and argument based on the breach of contract claim alone and never had a chance to present supplemental affidavits, additional exhibits or other evidence demonstrating that there was a genuine issue of material fact as to its detrimental reliance on the State's promise to make payments to the escrow account.

■ [¶ 16] These arguments are unpersuasive. In its summary judgment reply memorandum, Panasonic asked the court to consider the promissory estoppel claim at the summary judgment stage. In its motion for leave to amend, filed just two days prior to the summary judgment motion hearing, Panasonic assured the court that "[p]laintiff does not anticipate any further discovery as a result of the new claim, which does not implicate any significant new factual areas beyond what is already raised in the complaint." The court acted properly by acceding to Panasonic's own request, allowing both parties to address the claim at the September 13 hearing, and deciding the issue on the cross-motions for a summary judgment.

[¶ 17] Maine has adopted the *Restatement* formulation of the doctrine of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisor or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the prom-

---

SYS and the State is also questionable. *See F.O. Bailey Co., Inc. v. Ledgewood, Inc.*, 603 A.2d 466, 468 (Me.1992) (only intended, not incidental, third-party beneficiaries can sue on the contract). As we have explained, we

> must be careful to distinguish between the consequences to a third party of a contract breach and the intent of a promisee to give a third party who might be affected by that con-

tract breach a right to enforce performance under the contract. If consequences become the focus of the analysis, the distinction between an incidental beneficiary and an intended beneficiary becomes obscured. Instead, the focus must be the nature of the contract itself. . . .

*Devine v. Roche Biomed. Labs.*, 659 A.2d 868, 870 (Me.1995).

ise. The remedy granted for breach may be limited as justice requires.

*Restatement* § 90(1); *Chapman v. Bomann,* 381 A.2d 1123, 1127 (Me.1978); *see also Struck v. Hackett,* 668 A.2d 411, 420 (Me. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996). The promise must be otherwise unenforceable. *Mac-Naughton v. Cossin,* 493 A.2d 1040, 1043 (Me.1985).

[¶ 18] Panasonic claims that its February 1990 letter agreement with OASYS was conditioned upon OASYS's arrangement with the State for payment to an escrow account, and that when the State agreed to sign the May 1990 letter agreement to make payments to the escrow account, it was aware that Panasonic would not perform—that is, that Panasonic would not deliver the copiers so that OASYS could fulfill its contractual obligations to the State—without that assurance. Thus, according to Panasonic, the State's promise to make payments to the escrow account induced its detrimental reliance. We disagree.

■ [¶ 19] OASYS induced Panasonic's performance. Panasonic itself concedes that the February 1990 letter agreement for OASYS's purchase of the photocopiers was conditioned upon *OASYS's* establishment of an escrow account and *OASYS's* "arrangements with the State of Maine to deposit all such copier payments only in such account." When the State signed the May 1990 agreement to make such payments to the escrow account, it was merely cooperating with an arrangement that OASYS had bargained for with Panasonic. As the original January 1990 Purchase Order contract shows, the State never proposed or bargained for such an arrangement with OASYS (much less with Panasonic). The May 1990 letter agreement, written in the first-person by OASYS staff on OASYS stationery, states:

> As inducement to ... Panasonic ... for assistance in this project, *OASYS has granted* to Panasonic ... a security interest in funds due under the above-referenced [contract between OASYS and the State].... *In connection with this an escrow account has been established* at Key Bank. Accordingly, monthly pay-

ments under the [contract between OASYS and the State] will be made *payable to OASYS, Inc.* and delivered to [Key Bank].

(Emphases added.)

[¶ 20] Moreover, as already noted, OASYS's approach to the State in May 1990 was coercive. Thompson was essentially forced to sign the agreement to ensure delivery of the copiers three days after they were to have been delivered pursuant to the deal's original terms. Although the State could have foreseen that the assurances represented in the letter agreement would result in Panasonic's performance of its contract with OASYS, it is unjust to characterize its concession to OASYS's ultimatum as an inducement to Panasonic, especially for the purposes of applying an equitable doctrine. *See Restatement* § 90 (promissory estoppel does not apply unless "injustice can be avoided only" by enforcement of the promise); *see also Restatement* § 73 cmt. a ("[A promise] obtained by an express or implied threat to withhold performance of a legal duty ... does not have the presumptive social utility normally found in a bargain.").

Accordingly, the entry is:

Judgment affirmed.

