STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                      CIVIL ACTION
                                              DOCKET NO. CV-99-558

JUL 2 2 33 PM '01    TDW -Cum - 7/2/2001

SARAH WILEY,

       Plaintiff

   v.                                          ORDER ON MOTION
                                           FOR SUMMARY JUDGMENT
MARK STIMSON
ASSOCIATES, et al.,

       Defendants

 

Before the court is a motion by defendants Mark Stimson Associates and Ray Austin for summary judgment on counts I through VIII of the amended complaint.[1] Plaintiff Sarah Wiley does not oppose dismissal of counts III, IV and VI and does not oppose dismissal of her claims for punitive damages. What remains are Wiley's claims for breach of contract, her claim for unjust enrichment, her claim for negligent infliction of emotional distress, her claim for failure to pay compensation owed pursuant to 26 M.R.S.A. § 626, and two claims based on the "unfair agreement" statute, 26 M.R.S.A. § 629.

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties'

---

[1]    The court previously denied plaintiff leave to assert count IX of the amended complaint.

Rule 7(d) statements.  See Handy Boat Service, Inc. v. Professional Services, Inc., 1998 ME 134, ¶ 16, 711 A.2d 1306, 1310.[2]  The facts must be considered in the light most favorable to the non-moving party.  E.g., Panasonic Communications & Systems Co. v. State of Maine, 1997 ME 43, ¶ 10, 691 A.2d 190, 194.  Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant.  Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted.  Harkness v. Fitzgerald, 1997 ME 207, ¶ 5, 701 A.2d 370, 372.

Before considering the motion for summary judgment, the court will address several motions to strike filed by the parties with respect to affidavits submitted in connection with the motions.  The parties have indicated that these motions were filed because of Law Court precedent requiring such motions in order to avoid waiving their objections to affidavits in question.[3]

The parties are correct that certain aspects of the Pray and Bates affidavits either lack a proper foundation to show that they were made on personal knowledge or contain inadmissible hearsay.  Wiley's affidavit also contains some

---

2    After defendants filed their motion for summary judgment and before plaintiff filed her response, Rule 7(d) was replaced by Rule 56(h) -- a change effective January 1, 2001.  For purposes of this motion, nothing turns on the change in the rule.

3    The court does not quarrel with the proposition that objections to affidavits must be preserved but would suggest that this can usually be done by incorporating any objections in the summary judgment papers filed by the parties, particularly in their Rule 56(h) statements.  The result of the filing of motions to strike in this case has been to burden the record with subsidiary motions totalling 33 pages of argument.

2

alleged facts on which there is no showing of personal knowledge and in at least one important respect attempts to contradict her prior deposition testimony. All of these issues are appropriately raised and have been considered by the court in determining what weight or effect to give to the affidavits. However, given that other portions of the affidavits in question are not inadmissible, the motions to strike are denied.

Although counsel for Wiley did not file a further motion to strike, he did challenge at oral argument Stimson's filing of five additional affidavits at the time it filed its reply memorandum in support of its motion for summary judgment. On this issue, counsel for Wiley is entirely correct. Once a summary judgment motion has been filed and opposed, the movant cannot seek to bolster its factual showing by submitting further affidavits to which the party opposing summary judgment has no opportunity to reply.[4] The court has therefore disregarded the White, Steele, Moore, Kupferschmid, and Peterson affidavits in their entirety and will turn to the merits of defendants' motion.

---

[4]     Rule 56(h)(3), recently amended, now permits a reply statement of material facts when a party opposing summary judgment has not limited itself to controverting the facts set forth in the movant's Rule 54(h)(1) statement but has submitted additional facts that it contends raise genuine issues for trial. As the court understands it, however, a Rule 54(h)(3) reply statement is not a vehicle to offer new facts in support of the motion but instead an opportunity to show that the additional facts offered in opposition are not material or do not raise a genuine dispute.

## 1. Breach of Contract

Sarah Wiley was an associate real estate broker with Stimson from 1995 to 1999.[5] The applicable contract between Wiley and Stimson that was effective in 1999 provided that it could be "terminated at any time with or without cause, by either the company [Stimson] or the associate [Wiley] by written notice to the other". It is undisputed that defendant Austin, who is a supervisor at Stimson, attempted to tell Wiley he was terminating her after she swore at him during a telephone call on September 18, 1999. Defendants' Rule 7(d) statement ¶ 72; Wiley Dep. 10/26/00 at 72.[6] It is disputed whether Wiley received notice that she was terminated during the telephone call because she contends she hung up immediately after swearing at Austin and did not hear him tell her she was terminated. It is, however, undisputed that Wiley did at least receive oral notice that she had been terminated by Monday, September 20 and that she received written notice of her termination, at the latest, within the two weeks following the September 18, 1999 telephone conversation. Defendants' Rule 7(d) statement ¶ 79 and plaintiff's response thereto; Wiley Dep. 10/26/00 at 75-78, 83-85.

---

[5] In the beginning of 1999, Stimson was purchased by the DeWolfe companies and has since used that name.

[6] In her affidavit opposing summary judgment Wiley contends that she did not swear at Austin until after hanging up but this is squarely contradicted by her deposition. Wiley Dep. 10/26/00 at 72-73. Indeed, she testified she later called back to apologize for swearing at Austin. Id. Wiley cannot generate issues of fact for trial by submitting an affidavit contradicting her own deposition testimony. See Zip Lube Inc. v. Coastal Savings Bank, 1998 ME 81, ¶ 10, 709 A.2d 733, 735.

The only alleged breach of contract that Wiley has alleged is the failure to give her _written_ notice even though she had actual notice of her termination by Monday, September 20 and received written notice within two weeks. The court disagrees with plaintiff that the contract required a reasonable notice period before she could be terminated and has considerable doubt whether plaintiff can prove any damages, under the circumstances of this case, from the short delay in providing written notice of the termination.[7] Nevertheless, since the possibility of such damages is not foreclosed by defendants' Rule 7(d) statement, summary judgment is denied to Stimson on this claim.[8] As the Law Court stressed in the _Handy Boat Service_ case, in ruling on a motion for summary judgment, a court shall consider "only the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements.", 1998 ME 134, ¶ 16, 711 A.2d at 1310 (emphasis in original).

2.   _Unjust Enrichment_

Reserving the issue of whether Wiley can prove that she can satisfy the other elements of proof for an unjust enrichment claim, see, e.g., Forrest Associates v. Passamaquoddy Tribe, 2000 ME 195, ¶ 14, 760 A.2d 1041, 1045-46, she cannot surmount the undisputed fact that there is a contract in this case. Defendants' Rule

---

[7]   Any such damages would be limited only to those damages specifically incurred as a result of the failure to give plaintiff written notice from the time of her oral termination until the date of the written notice. She is not entitled to damages based on her termination generally nor is she entitled to damages based on emotional distress. See Colford v. Chubb Life Ins., 687 A.2d 609, 616 (Me. 1996).

[8]   Summary judgment is granted as to defendant Austin because he was not a party to the contract and therefore could not have breached it.

7(d) statement ¶ 3. That contract provided that upon termination Wiley's listings would remain the property of Stimson.[9]

The existence of a contractual relationship precludes recovery on an unjust enrichment theory. Nadeau v. Pitman, 1999 ME 104 ¶ 14, 731 A.2d 863, 867. Accordingly, summary judgment is granted dismissing count II of the amended complaint.[10]

3.    Negligent Infliction of Emotional Distress

To recover on a claim of negligent infliction, a plaintiff has to demonstrate both that the defendants owed her a duty of care and that there was a breach of that duty. Bryan R. v. Watchtower Bible & Trust Society, 1999 ME 144, ¶ 30, 738 A.2d 839, 848, cert denied, 528 U.S. 1189 (2000). The court has carefully considered the facts set forth in the Rule 7(d) statement filed by Wiley, to the extent they are properly supported by record references, and concludes that none of those facts generate a genuine factual dispute as to whether defendants breached any duty of care to the plaintiff when she was terminated for swearing at defendant Austin in a phone call. This is true even if, as Wiley testified at her deposition, she swore at Austin and

---

[9]    The contract also provided that Wiley would be entitled to compensation for any transactions that were under contract, but it is undisputed that Wiley had no transactions under contract at the time of her termination. Defendants' Rule 7(d) statement ¶ 82.

[10]    Wiley's argument that both an unjust enrichment claim and a contractual claim were asserted in Howard & Bowie, P.A. v. Collins, 2000 ME 148, 759 A.2d 707, misses the mark because the unjust enrichment claim in Howard & Bowie was directed at the successor attorneys with whom Howard & Bowie had no contractual relationship. See 2000 ME 148, ¶ 8, 759 A.2d at 709.

6

hung up on him only after he yelled at her and insisted that she meet with him to discuss problems raised by a client even though she told him at she did not want to meet and needed to leave for Michigan before the end of the coming week in order to visit her sick mother.[11] The undisputed facts do not generate an issue for trial as to whether there was any breach of duty, and summary judgment is therefore granted for defendants on count V of the complaint.

### 4. Claim Under 26 M.R.S.A. § 626

Under 26 M.R.S.A. § 626 (Supp. 2000), an employee must be paid all unpaid wages owed within a specified time after leaving her employment. If this statute is not complied with, an employer is liable for three times the amount of the unpaid wages plus a reasonable attorney's fee.

The statute expressly excludes independent contractors from those entitled to assert liability under § 626, and Wiley's contract with Stimson expressly declared her to be an independent contractor. Wiley nevertheless argues that for a certain period during her tenure as a real estate broker at Stimson, she was required to serve as a "duty broker" answering telephones at the Stimson office -- a job which, Wiley argues, began as a part of her duties as an associate broker but which was changed in September 1996 to reduce her to the position of a glorified receptionist or "call coordinator". According to Wiley, therefore, during those specific times she

---

[11] Plaintiff's memorandum in opposition to summary judgment and her affidavit catalog a more extensive list of alleged offenses by Ray Austin. The court does not have to reach the issue of whether these facts, if listed in plaintiff's Rule 7(d) statement, would have generated disputed issues of fact for trial on Wiley's negligent infliction claim because the court is limited solely to the facts set forth in the Rule 7(d) statements. Handy Boat, 1998 ME 134, ¶ 16, 711 A.2d at 1311.

7

worked as a "duty broker" after September 1996, she was an employee even if she otherwise qualified as an independent contractor at all other times.

Wiley does not take issue with the proposition that she was in fact an independent contractor when she was performing her other work as a real estate broker.[12] She argues, however, that Stimson had some acknowledged dual status employees (including managers who were employees but who could also receive occasional commission income as independent contractors when and if they personally served as brokers). She contends that she was an unacknowledged dual status employee -- an independent contractor when listing and selling real estate but an employee when compelled to serve as "duty broker". According to the facts submitted by Wiley and assumed to be true for purposes of summary judgment, the "duty broker" responsibility involved mandatory shifts when she was assigned to answer telephones and meet walk-in customers at the office. Wiley has also offered evidence that although the duty broker hours were originally a source of potential clients, a "broker protection" policy instituted by Stimson in September 1996 prevented Wiley from gaining any appreciable number of clients during her "duty

---

12    See plaintiff's memorandum in opposition to defendants' motion for summary judgment, filed January 10, 2001, at 15 (crux of plaintiff's unpaid wage claim is that she "should have been treated as an employee for call coordinator duties and as an independent contractor when she earned commissions"). Even if Wiley had contested this issue, the court would have no difficulty concluding that while various facts relating to Wiley's employment relationship with Stimson are disputed, there are sufficient undisputed facts to establish beyond dispute that -- while performing all her duties except perhaps that of "duty broker" from September 1996 onward -- Wiley met the actual qualifications of an independent contractor above and beyond the label applied to her in her contract with Stimson.

broker" stint, requiring her instead to forward almost all customers to the listing broker and reducing the duty broker to essentially receptionist status.

The court need not reach this issue in the context of Wiley's § 626 claim, however, because Wiley's § 626 claim fails for a different reason. Even if she were permitted to categorize herself as an employee for the specific hours per week that she served as duty broker, section 626 would only allow Wiley to sue for unpaid compensation. Wiley never had any separate agreement with respect to compensation for her duty broker hours. Her arrangement with Stimson was that her duty broker work was part of her overall responsibilities, and she was compensated for all of her work in the form of her commission income. Defendants' Rule 7(d) statement ¶ 83. It follows that she does not have any unpaid compensation to sue for under § 626. Section 626 does not permit Wiley to treat her duty broker work as somehow entitled to separate compensation, on a quantum merit basis, even though no separate compensation was ever part of her arrangement. It does not require an employer to pay amounts that were never agreed to within two weeks of termination or risk treble damages.

The undisputed facts here also establish that, including her duty broker work for which she received no separate compensation, Wiley received commission income that exceeded the minimum wage for the total hours she worked both as a duty broker and otherwise. See Defendants' Rule 7(d) statement ¶ 71. As a result, there are no unpaid wages to form the basis for a claim under § 626.

5.    Claim Under 26 M.R.S.A. § 629 - Uncompensated Work

Wiley makes two claims under 26 M.R.S.A. § 629 (1988). Her first claim is that, while working as a duty broker after the broker protection plan was instituted, she was an employee forced to work without compensation in violation of § 629's prohibition on requiring any person "as condition of . . . retaining employment to work without monetary compensation."

Like her claim under § 626, Wiley's claims under § 629 depend on her status as an employee. Section 629 does not apply to economic arrangements that may be made between employers and independent contractors. This is evident from the language of § 629 itself and is not disputed by Wiley. However, unlike § 626, a claimant under § 629 can recover even if there is no agreed rate of compensation since the statute is specifically designed to prevent employees from being forced to perform uncompensated work in order to keep their jobs. See Cooper v. Springfield Terminal Ry. Co., 635 A.2d 952 (Me. 1993).

This brings the court back to the question of whether Wiley may claim dual employee/independent contractor status -- entitled to retain her commission income for her other work and also to recover the reasonable value of her services as a duty broker.[13] Defendants argue that notwithstanding her duty broker work, the undisputed facts establish that Wiley was an independent contractor at all times. See Stetka v. Hunt Real Estate Corp., 859 F.Supp. 661, 667 (W.D.N.Y. 1994) (determining

---

[13]    Any amount recovered on this basis could potentially be trebled under 26 M.R.S.A. § 626-A (2000).

10

on motion for summary judgment that real estate salesperson was independent contractor even though required to attend staff meetings and house tours and put in "floor time" answering phones). The court does not need to go that far in this case. Without ruling out the possibility that for certain purposes Wiley might be entitled to claim employee status for her work as a duty broker,[14] the court concludes that she is not entitled to assert a claim under § 629. This follows from Wiley's acknowledgment that she was an independent contractor for the majority of her work at Stimson. Under these circumstances, allowing her to assert an uncompensated work claim under § 629 would permit her to retain her agreed-upon commission income for the portions of the work that she found remunerative and seek additional compensation, over and above her contract, for the portions of her work that she found inconvenient and unprofitable.

As noted above, Wiley received compensation in the form of commission income for all her work at Stimson, including her duty broker work. Moreover, unlike the hourly workers at issue in Cooper v. Springfield Terminal, who were required to undergo 10 days of training without pay, 635 A.2d at 954, the duty broker work for which Wiley is seeking to recover was work that was part and parcel of the overall work for which Wiley did receive commission income. It is undisputed in this case that a person serving as a duty broker had to be a licensed real estate broker or associate broker in order to answer inquiries about properties. Defendant's Rule

---

14      For example, the court need not decide whether Wiley could have qualified as an employee for workers compensation purposes if she had suffered a workplace injury while serving as duty broker.

11

7(d) statement ¶ 24.[15] It is also undisputed in this case that Wiley was aware that she would have to serve as a duty broker when she entered her original independent contractor agreement with Stimson. Defendants' Rule 7(d) Statement ¶ 30; Wiley Dep. 10/20/00 at 49. Finally, as noted above, Wiley does not dispute that she was an independent contractor even while serving as a duty broker prior to the institution of the broker protection policy in September 1996.

Both before and after the institution of the broker protection policy, duty brokers had the ability to obtain new clients or listings as a result of serving as a duty broker. Wiley does not dispute this in theory but contends that those opportunities became virtually non-existent after the broker protection policy was instituted in September 1996.[16] While there may be a dispute whether the broker protection policy substantially curtailed or even eliminated a duty broker's opportunity to obtain new business, the flip side of this argument is that broker protection also worked to Wiley's benefit by requiring other duty brokers to forward clients to her when she was the listing broker and when those clients asked for her.[17]

---

[15]    Although disputing other portions of this paragraph, Wiley does not dispute this point. She does, however, argue that in one other office, Stimson hired a person who had a real estate license as an employee to serve as call coordinator.

[16]    As noted above, Wiley is seeking employee status only while she worked as a duty broker and only after "broker protection" was installed.

[17]    For purposes of summary judgment, the court accepts Wiley's evidence that because she worked relatively few hours overall, her work as a duty broker constituted a relatively significant percentage of her overall hours. See, e.g., Defendants' Rule 7(d) statement ¶¶ 71-72. However, it is undisputed that how many hours Wiley chose to work overall was up to her. Defendant's Rule 7(d) statement ¶ 39; Wiley Dep. 10/26/00 at 108. If she had worked significantly longer hours (as many Stimson brokers no doubt did), her

12

Given that her duty broker work was a part of her overall work as an associate real estate broker, Wiley cannot segregate out her duty broker work as uncompensated for purposes of § 629. As demonstrated by <u>Cooper v. Springfield Terminal</u>, section 629 permits hourly workers to sue for uncompensated hours they were required to work. Section 629 does not allow independent contractors to allocate all of their compensation to certain tasks and then seek recompense as employees for the remainder of their work.

6.    <u>Claim Under 26 M.R.S.A. § 629 - Unfair Agreement</u>

Wiley's second claim under 26 M.R.S.A. § 629 is based on her decision to enter a "home office agreement" with Stimson in late 1997 or early 1998. Under that agreement, Wiley avoided further "duty broker" work by accepting an arrangement whereby she worked out of her house. It is undisputed that under a "home office agreement", which is an arrangement offered to brokers at Stimson, a broker is given the flexibility to work out of his or her home and receives a potentially more favorable schedule of real estate commission income but saves Stimson the cost of providing office facilities.

Thus, before Wiley entered the home office agreement, Stimson was entitled to 7% off the top of all commissions Wiley received, and the remaining commission amounts were divided 30% to Stimson and 70% to Wiley. Under the home office agreement, Wiley paid Stimson $895 per month but received 100% of all

---

duty broker hours would have been a significantly smaller component of her work. Whether duty brokers are "employees" for purposes of Maine's wage payment statutes should not necessarily depend on how many other hours they put in if the number of hours they work is within their own control.

13

commission income after Stimson's initial 7% was taken off the top. Defendants' Rule 7(d) statement ¶¶ 59, 61. Wiley, however, focuses on the monthly $895 payment to Stimson and argues that this was prohibited by section 629, which forbids employment contracts requiring reimbursements to employers except for repayment of loans and advances. She stated in her affidavit that she only chose to accept a home office agreement to avoid "duty broker" work and therefore characterizes the home office agreement as a requirement that she pay Stimson $895 per month to avoid being required to perform uncompensated duty broker work.

Once again, the court need not decide whether Wiley has generated a genuine dispute for trial as to whether she could qualify an employee for certain purposes while serving as a duty broker. For the reasons stated above, Wiley cannot have it both ways for purposes of ¶ 629. Moreover, upon entering the home office agreement, Wiley put her duty broker obligations behind her. Once the home office agreement took effect, Wiley was an independent contractor pure and simple. Thus even if there were an issue of fact as to whether Wiley previously qualified for dual employee/independent contractor status by virtue of her duty broker work, that status ceased once she accepted the home office agreement. Wiley cannot bootstrap her prior duty broker work into a claim that she remained a dual status employee even after she ceased doing duty broker work under the home office agreement.

Summary judgment will therefore be entered dismissing count VIII of the amended complaint.

14

The entry shall be:

For the reasons set forth herein, defendants' motion for summary judgment is granted with respect to counts II, V, VII and VIII of the amended complaint. Defendant Austin's motion for summary judgment is also granted as to count I. Defendant Stimson's motion for summary judgment is denied as to count I.

Dated: June 29 , 2001

Thomas D. Warren
Justice, Superior Court