STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     CIVIL ACTION
                                                    DOCKET NO: CV-06-510
                                                    RAC - CUM-12/12/2007

LINDA WATT,

                    Plaintiffs,
                                                    ORDER ON DEFENDANT'S
        v.                                          MOTION FOR SUMMARY
                                                    JUDGMENT

UNIFIRST CORPORATION,

                    Defendant.

This case comes before the Court on Defendant UniFirst Corporation's

(UniFirst) Motion for Summary Judgment pursuant to M.R. Civ. P. 56.

## FACTUAL BACKGROUND

Plaintiff Linda Watt (Ms. Watt) claims that UniFirst failed to comply with

the Maine Human Rights Act when it did not remedy a hostile work

environment and subsequently fired Ms. Watt in retaliation for her complaints of

sexual harassment by a coworker. Ms. Watt was sexually harassed by a

coworker, John Hughes (Hughes), while they were employed with UniFirst in

2005.

Ms. Watt began working at UniFirst in the summer of 2004 as a

dockworker. At orientation, Ms. Watt was fully trained in UniFirst's sexual

harassment policies. Sometime during the spring of 2005 she and Hughes began

to have altercations. Neither party disputes that on or about May 16, 2005

Hughes sexually harassed Ms. Watt in the UniFirst breakroom. Ms. Watt

reported that incident to her supervisors and Hughes ultimately received a

"verbal warning" in his file with directions to cease the offensive behavior and

any interactions with Ms. Watt.

1

Subsequent to the May incident (sometime in June) Ms. Watt reported to her direct supervisor that Hughes was speaking of her derogatorily to others in the breakroom. UniFirst took no action until they received a letter from Ms. Watt's attorney detailing a series of allegations of sexual harassment against Ms. Watt by Hughes. At that point UniFirst undertook an investigation of the allegations and on June 29, 2005, suspended Hughes for 3 days as a result of the investigation. Upon his return to work, Hughes was told not to interact with Ms. Watt in any way.

After the suspension another altercation occurred. On or about July 13, 2005 Ms. Watt entered a work area occupied by Hughes in order to find a hamper. An argument ensued with name-calling.[1] Hughes reported the incident to supervisor Smith. Smith met with both parties but did not take any disciplinary action. Ms. Watt made no further sexual harassment reports to her supervisors. She asserts in her affidavit, however, that Hughes continued to sexually harass her when no one was around.[2]

On September 16, 2005 a significant physical altercation between Ms. Watt and Hughes occurred at UniFirst. Ms. Watt, again, left her work area in search of a hamper. She found a hamper but was stopped from removing it by Hughes who claimed that he was using it. A physical struggle over the hamper ensued that injured Ms. Watt. Ms. Watt asserts that Hughes moved toward her menacingly with a clenched fist and that in response she grabbed a three-foot metal bar and hit him in self-defense.

---

[1] Hughes allegedly called Ms. Watt a "black bitch" and threatened "to put her with her mother" (who is deceased). Ms. Watt responded by calling Hughes a "yellow bitch."
[2] The alleged harassment took the form of menacing stares and derogatory statements such as "black bitch" and "stinky butt."

2

An investigation conducted by William L. Coe (Coe), Director of Human Resources for UniFirst, resulted. Coe interviewed both parties. In her interview, Ms. Watt detailed the history of sexual harassment. Coe investigated the altercation but did not specifically investigate the sexual harassment claims. Both Ms. Watt and Hughes were fired as a result of the investigation.

Ms. Watt claims that UniFirst failed to remedy the hostile work environment and subsequently fired her in retaliation for her reports of sexual harassment against Hughes.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

When ruling on a motion for summary judgment, this Court "is to consider only the portions of the record referred to, and the material facts set

3

forth, in the Rule 7(d) statements." *Corey v. Norman, Hanson, & DeTroy*, 1999 ME 196, ¶8, 742 A.2d 933, 938 *(quoting Handy Boat Serv., Inc. v. Professional Servs., Inc.,* 1998 ME 134, ¶12, 711 A.2d 1306, 1310). Also, the parties may file affidavits in support of or in opposition to a summary judgment motion, but "[c]onclusions of fact and law do not properly belong in an affidavit filed in support of a motion for summary judgment." *Town of Orient v. Dwyer*, 400 A.2d 660, 662 (Me. 1985). The affidavits must be "made on personal knowledge [and] shall set forth such facts as would be admissible in evidence, . . ."[3] M.R. Civ. P. 56(e).

## DISCUSSION

At issue is whether Ms. Watt has put forth sufficient evidence to infer that UniFirst is in violation of the Maine Human Rights Act (MHRA). The MHRA has been interpreted under the same analytical framework as Title VII of the Civil Rights Act of 1964 (Title VII). *Higgins v. The TJX Cos., Inc.*, 331 F.Supp. 2d 3, 6 (D. Me. 2004). Under Title VII it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 126 L. Ed. 2d 295, 114 S. Ct. 367, 370 (1993)*(quoting* 42 U.S.C. § 2000e-2(a)(1)).

### I.    Hostile Work Environment Claim

Ms. Watt asserts that UniFirst violated the MHRA by failing to maintain a non-hostile work environment. The hostility stemmed from the behavior of a

---

[3] Much of the support for Ms. Watt's allegations is found in her affidavit. UniFirst asserts that much of this evidence is not admissible under Rule 56(e). However, Ms. Watt's personal observations and impressions are admissible and to the extent that the affidavit or deposition recounts insults or taunts (words spoken) that contribute to the hostile work environment claim, they are also admissible. *See Noviello v. City of Boston*, 398 F.3d 7684-85 (1st Cir. 2005).

4

coworker. In order to hold UniFirst accountable for those behaviors, Ms. Watt must establish the elements of a sexual harassment hostile work environment claim and establish a basis for employer liability.

### a. Elements of a Sexual Harassment Hostile Work Environment Claim

The elements of a sexual harassment hostile work environment claim are:

(1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Crowley v. L.L. Bean Inc.*, 303 F.3d 387 (1st Cir. 2002). The environment must be "objectively hostile or abusive" to a reasonable person "as well as the victims subjective perception that the environment is abusive." *Id.* (*citing Harris*, 510 U.S. at 20). In classifying an environment as hostile or abusive, a court must look at all of the circumstances including but not limited to the frequency and severity of discriminatory conduct and whether it is physically threatening or humiliating. *Harris*, 510 U.S. at 23. "[A] hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Crowley*, 303 F.3d at 396 (*quoting Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 153 L. Ed. 2d 106, 122 S. Ct. 2061, 2074 (2002)).

In this case Ms. Watt alleges a series of hostile interactions with Hughes. At least one of the incidences (the kiss in the breakroom in May 2005) can be construed as sexual harassment. Hughes admitted to the incident and UniFirst was aware of it as is reflected in Hughes's employment file. UniFirst asserts that

5

some of the interactions alleged were not sexually based discrimination and thus not subject to the MHRA. Whether or not the series of hostile interactions were sexually based is a material fact in dispute. Considering the proffered facts in a light most favorable to Ms. Watt and considering the separate hostile acts collectively, Ms. Watt has established a prima facie case of workplace sexual harassment by a coworker.

The issue thus becomes the extent to which UniFirst can be held liable for any of these behaviors.

### b. Employer Liability for Harassment by a Coworker

When it is the misconduct of a fellow employee and not an employer that is at issue, a plaintiff must show that the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and corrective action." *Higgins*, 331 F. Supp. 2d at 6. "The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005) (citations omitted). The sixth circuit has found that:

> when the allegations of sexual harassment involve a coworker and the employer has fashioned a response, the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'

*Id. (quoting Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)) (emphasis added). Consequently an employer will only be liable under Title VII "if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Id.*

Employers have been held liable when, after repeated reports of sexual harassment by coworkers, progressive remedial measures have not been

implemented. *See generally Crowley*, 303 F.3d 387. In that case a female employee repeatedly reported the stalking behavior of a male coworker. *Id.* at 392. The sole remedial measure implemented by the employer was the re-assignment of the male coworker to another work area. *Id.* at 404. The company neither suspended nor fired him until plaintiff got a protection order from the courts. *Id.* at 403.[4]

In contrast, no employer liability was found when a company failed to remedy a hostile work environment of which it was not aware. *See Chaloult v. Interstate Brands Corp.*, 2007 U.S. Dist. LEXIS 6935 (D. Me.). In that case, in spite of plaintiff's knowledge of the company sexual harassment policy, she reported allegations of sexual harassment only to a coworker. *Id.* at 11. Consequently, the Court concluded that she had failed to give her employers adequate notice to cure the situation. *Id.*

In this case UniFirst responded progressively to Ms. Watt's assertions of harassment by issuing a verbal warning and subsequently suspending Hughes. With respect to the July 13th incident, UniFirst was made aware of the incident by Hughes, not by Ms. Watt. Ms. Watt conceded, in the subsequent investigation, that she entered Hughes's work area. A decision was made not to sanction either party for the altercation. There is no evidence in the record to show that Ms. Watt made any reports of harassment of any kind after the July 13th incident and prior to the investigation of the September assault.

---

[4] The Law Court found some merit in employer's argument that, though not effective, the reassignments were prompt and appropriate actions and therefore reasonable. *Crowley*, 303 F.3d at 403. However, the procedural posture was not a de novo review, consequently the jury verdict was upheld. *Id.*

Ms. Watt contends that genuine issues of material fact exist regarding 1) the existence of ongoing harassment after Hughes's June 29, 2005 suspension, 2) UniFirst's awareness of the harassment, and 3) the dearth of response by UniFirst after the June suspension. Ms. Watt has failed to establish, however, that UniFirst's response was indifferent or unreasonable, or that it indicates an attitude of permissiveness that amounts to discrimination. Accordingly, summary judgment should be granted to UniFirst on Count I of the Complaint.

## II.     Retaliation Claim

In Count II of her Complaint, Ms. Watt asserts that UniFirst impermissibly terminated her employment in retaliation for her sexual harassment complaints. In order to establish a retaliatory discharge claim under the MHRA, Ms. Watt must "show that (1) she engaged in a protected activity, (2) her employer thereafter subjected her to adverse employment action, and (3) a causal link existed between the two events." *Bowen v. Dept. of Human Svcs.*, 606 A.2d 1051, 1054 (Me. 1992) (citations omitted).

A protected activity is any "conduct by [Watt] that is in opposition to an unlawful employment practice of the defendant." *Id.* Ms. Watt's complaints filed regarding the sexual harassment would satisfy this element. "An adverse employment action is one that materially changes the conditions of plaintiffs' employ." *Id.* Watt's employment termination satisfies this element of the claim.

Accordingly the only issue in play is whether there is a causal link between Ms. Watt's termination from employment and her complaints of sexual harassment. Ms. Watt "must present sufficient evidence to raise an inference that her protected activity was the likely reason" for her termination and that UniFirst "was aware she was engaged in the protected activity. *Id.* Should she

8

succeed, the burden then shifts to UniFirst to "articulate legitimate, non-retaliatory reasons for its employment decision." *Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 58 (1st Cir. 2002) (citations omitted). If UniFirst were able to articulate such reasoning, the burden would revert to Ms. Watt to "show that the legitimate reason is pretextual and that the adverse employment action resulted from the defendant's retaliatory animus." *Id.*

The time lapse between a protected event and an alleged retaliatory employment action is considered in the analysis of a causal link. *Id.* at 60. Twelve months was deemed too long to support a causal link alone. *Id.* In contrast, one and one half months between a protected activity and an adverse action has been deemed sufficient, by itself, to establish causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (*citing Ramirez v. Ok. Dept. of Mental Health*, 41 F3d 584, 596 (10th Cir. 1991). In this case, considering the facts in a light most favorable to Ms. Watt, less than a month passed between her report to Coe during the investigation of the September 13th incident and her firing on September 30, 2005. Consequently Ms. Watt has prevailed on her initial burden of raising a retaliation claim.

The burden then shifts to UniFirst to articulate a legitimate, non-retaliatory rationale for Ms. Watt's firing. UniFirst asserts that an assault with a three-foot metal rod is a legitimate reason to fire an employee and is plainly stated as a basis for employment termination according to UniFirst's policies. Ms. Watt does not deny that she hit Hughes with the metal rod. The court deems UniFirst's rationale legitimate.

Consequently the burden rests on Ms. Watt to show that this reasoning was pretextual. The First Circuit recently held that a plaintiff failed to meet its

9

pretextual burden when it put forth no evidence to show that disciplinary action imposed was disparate. *Azimi v. Jordan's Meats, Inc*, 456 F.3d 228, 2243 (1st Cir. 2006). In this case, Ms. Watt attempts to carry the burden by comparing the alleged fact that Hughes was not fired for assaulting (strangling) a coworker. She supports that allegation, however, by citing to a deposition that finds that no such assault occurred.

In addition Ms. Watt argues that she was acting in self-defense when she struck Hughes with the metal bar. This claim, however, does not raise any inference of pretext or of discrimination retaliation, consequently, Ms. Watt has failed to carry her burden on the retaliation claim.

## Therefore, the entry is:

> Defendant's Motion for Summary Judgment is GRANTED with respect to Count I.

> Defendant's Motion for Summary Judgment is GRANTED with respect to Count II.

> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this __12th__ day of __December__, 2007.

Roland A. Cole
Justice, Superior Court

10

F COURTS
ind County
iox 287
ne 04112-0287

GUY LORANGER ESQ
110 MAIN STREET SUITE 1520
SACO ME 04072

*Plaintiff*

F COURTS
ind County
iox 287
ne 04112-0287

ADAM TAYLOR ESQ
4 MILK STREET SUITE 103
PORTLAND ME 04101

*Defendant*

STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2008 JUN 17 A 8: 14

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-06-510

LINDA WATT,

Plaintiffs,

v.

UNIFIRST CORPORATION,

Defendant.

DONALD L. GARBRECHT
LAW LIBRARY
JUL 18 2008

**ORDER ON PLAINTIFF'S
MOTION FOR
RECONSIDERATION**

This case comes before the Court on Plaintiff Linda Watt's (Ms. Watt)

Motion for Reconsideration pursuant to M.R. Civ. P. 59(e).[1]

## DISCUSSION

Motions for reconsideration shall only be filed "to bring to the court's

attention an error, omission or new material that could not previously have been

presented." M.R. Civ. P. 7(b)(5).

### I. Reconsideration of Hostile Work Environment Claim

Ms. Watt asks this Court to reconsider in light of a subsequently

published case from the First Circuit Court of Appeals that sets a lower standard

---

[1] The advisory committee notes state:

> Rule 59 (e) is amended to add a new last sentence making clear that a
> motion to reconsider the judgment is a motion to alter or amend the
> judgment, thereby removing confusion as to whether the appeal period is
> suspended until the court can dispose of the motion. Motions to
> reconsider should not be filed under Rule 60. A corresponding
> amendment to Rule 7(b) discourages such motions and permits the court
> to dispose of motions to reconsider without waiting for opposition to be
> filed.

M.R. Civ. P 59(e) advisory committee's note May 2000, Alexander, *The Maine Rules of Civil Procedure Advisory and Committee Notes*, (2006).

1

for employer liability in co-worker sexual harassment cases. *See Forrest v. Brinker International Payroll Company, LP,* 511 F.3d 225 (1st Cir. 2007). Decisions of the First Circuit are not binding on this Court. Moreover, the cited case does not set a lower standard, it merely states that the facts of that case can be decided on a less stringent standard.[2] *Id.* at n. 8. Regardless, even in light of the *Crowley* standard, this Court does not believe that a reasonable jury could conclude, in light of all of the undisputed facts, that UniFirst's response to Ms. Watt's complaints of sexual harassment was not prompt and appropriate.

## II.    Reconsideration of Retaliation Claim

Ms. Watt further moves this Court to reconsider the retaliation claim because it failed to consider an affidavit which was evidence that Ms. Watt's firing was pretextual. Specifically, she asserts that the Court failed to consider the deposition of Mr. Lane, who alleges that he assaulted a coworker and was not fired for the offense; unlike Ms. Watt who was fired for assaulting Hughes. That fact, however, was not in evidence because the record citation supporting the fact referred the Court to a deposition that directly contradicted the fact. This Court has "no independent duty to search or consider any part of the record not specially referenced in the parties' separate statement of facts." M.R. Civ. P. 56(h)(4).

However, even if the affidavit was in evidence, UniFirst did an investigation of the alleged incident and found that Mr. Lane did not commit an assault and therefore employment termination was unnecessary. In contrast,

---

[2] The standard applied was derived from *Crowley v. L.L. Bean.* 303 F.3d 387 (1st Cir. 2002). The Crowley Court stated: "a plaintiff must demonstrate that the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." *Id.* at 401 (citations omitted).

there is no question that Ms. Watt assaulted Hughes and that, because of the assault, UniFirst terminated her employment. Thus, there is no evidence of disparate treatment in the record.

## Therefore, the entry is:

Plaintiff's Motion for Reconsideration on both counts is DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _17th_ day of _____, 2008.

Roland A. Cole
Justice, Superior Court

3

F COURTS
and County
Box 287
ine 04112-0287

GUY LORANGER ESQ
110 MAIN STREET SUITE 1250
SACO ME 04072

*plaintiff*

F COURTS
nd County
ox 287
he 04112-0287

ADAM TAYLOR ESQ
4 MILK STREET SUITE 103
PORTLAND ME 04101

*Defendant*