**FARLEY INVESTMENT CO.**

**v.**

**Ralph Dudley WEBB, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 20, 1992.

Decided Dec. 14, 1992.

Robert H. Stier, Jr. (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiff.

James F. Cloutier (orally), Cloutier, Barrett, Cloutier & Conley, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Defendants [1] appeal from a judgment on a jury verdict entered in the Superior Court (Cumberland County, *Wernick, A.R.J.*) in favor of the plaintiff, Farley Investment Company (Farley), for an amount in excess of $1.2 million. On appeal, the defendants contend that the court made numerous errors, primarily in its ruling on a motion in limine and in its instructions to the jury. We affirm the judgment of the Superior Court.

In 1985, Farley acquired one parcel of land (the Farley property) and options on two other adjacent parcels of land located on the Portland waterfront in order to construct a mixed-use development complex. Farley turned over its development plans to Ralph Dudley Webb, a successful real estate developer, who then delegated responsibility for the project to Christopher Fleming and his partners, Charles F. Norton, Jr., and W. Godfried Wood, collectively known as St. James Properties.

On April 17, 1986, Agritech Systems, Inc., (Agritech), a biotech company, expressed an interest in moving into the building on the Farley property. Farley advised Agritech to negotiate with Webb since he was coordinating the project. Webb, in order to induce Agritech to enter into a lease of the premises, offered to pay $1 million to renovate the space in the existing building and add a number of high tech improvements. On August 5, 1986, Agritech executed a 10–year lease for the space with Portland Development Associates (Portland Development), a limited partnership formed by Webb to eventually purchase the property.

Although Portland Development's financing never materialized, renovations on the existing building proceeded and Agritech moved into the space in November of 1986. In mid-December, prior to the scheduled closing date, the parties learned that the air conditioning and ventilating equipment added during the renovations were causing the roof to sag and that a heavy snow fall might cause the roof to collapse entirely. Agritech, concerned that Portland Development, its landlord under the terms of its lease, was not yet the owner of the building, requested and received assurances from Farley that it would honor the terms of the lease until the property was transferred to Portland Development. In doing so, Farley agreed to assume the obligations of the landlord under the lease on the condition that Webb and the other defendants indemnify Farley for any expenses incurred.

Since Webb was still unable to arrange financing to purchase the Farley property, the parties agreed to extend the closing date. In early January of 1987, Portland Development and Farley signed a number of agreements concerning the transaction, including: (1) a purchase and sale agreement; (2) unconditional guarantees from the individual defendants of Portland Development's full performance of the purchase and sale agreement; (3) an indemnity agreement from the individual defendants covering expenses relating to the Agritech lease; and (4) a limited partnership agreement, under which Farley was to become a limited partner in Portland Development.

After numerous attempts over the next few months to reschedule the closing date proved unsuccessful, Farley brought suit against Webb, his partners, and their various limited partnership entities, alleging losses in excess of $1.2 million resulting from breaches of the purchase and sale agreement, the personal guaranty agreements and the indemnity agreement. Following a jury trial, a verdict against the defendants was returned in the amount of $1,228,513.56.

## I.

### The Prior Letter Agreement

■ Defendants first argue that the trial court erred by granting Farley's motion in limine to exclude evidence concerning a letter agreement between the parties dated

---

1. The following defendants have joined in this appeal: Ralph Dudley Webb, Christopher B. Fleming, Charles F. Norton, Jr., W. Godfried Wood, Webb/St. James Ventures Limited Partnership II, and Portland Development Associates Limited Partnership.

March 4, 1986. That letter set forth the intent of both parties to develop the waterfront property in Portland. The Superior Court concluded that the parol evidence rule barred admission of the letter agreement due to the subsequently agreed on purchase and sale agreement. At issue are portions of the letter, omitted from the subsequent purchase and sale agreement, detailing what would happen in the event that the property was not rezoned or the plan was disapproved. In excluding that evidence, the court found that:

> [t]he totality of the circumstances, here, leads the court to conclude that the Purchase and Sale Agreement is fully integrated. The court holds it to be the entire agreement of the parties which has merged within its four corners all the prior negotiations, expressions of intent and understandings of the parties.

█ The parol evidence rule "operates to exclude from judicial consideration extrinsic evidence offered to vary, add to, or contradict the terms of an integrated written agreement." *Clarke v. Dipietro*, 525 A.2d 623, 625 (Me.1987). Application of the rule requires an initial finding that the writing was intended by the parties to integrate their understandings with respect to the subject matter of the agreement. *Connell v. Aetna Life & Casualty Co.*, 436 A.2d 408, 412 (Me.1981). We hold that the trial court correctly concluded that the purchase and sale agreement was intended to be a full and complete integration of the parties' agreement.

First and foremost, the agreement itself contained the following clause evidencing its completeness: "Interpretation and Binding Effect. This instrument ... sets forth the entire agreement between the parties...." The agreement was signed on the very next page by Christopher Fleming, the "authorized signatory of the General Partner [Webb/St. James Ventures II]." In addition, the detailed and comprehensive nature of the agreement further illustrates that the parties intended the document to constitute a full and complete expression of their transaction.

## II.

### Jury Instructions

The defendants maintain that the trial court committed numerous errors in various portions of its instructions to the jury. "We may disturb a judgment on the ground of an erroneous jury instruction only if the instruction failed sufficiently to inform the jury correctly and fairly. in all necessary respects of the governing law ... and only if the instruction resulted in prejudice to the complaining party." *Eckenrode v. Heritage Management Corp.*, 480 A.2d 759, 763 (Me.1984) (citations omitted).

█ The defendants argue that the court incorrectly stated the burden of proof on the issue of whether the parties agreed to extend the closing date. They maintain that the court should have instructed that Farley must prove an agreement to extend the closing date by clear and convincing evidence. In *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 149–50 (Me. 1984), we discussed the types of civil cases to which the clear and convincing standard applies. This is not one of those instances.

The remaining claims of error in the court's instructions are similarly without merit. "A party is not entitled to have a requested instruction given, even if it states the law correctly, unless it appears that it is supported by facts, that it is not misleading, that it is not already covered by the charge, and that the refusal to give it would be prejudicial." *Towle v. Aube*, 310 A.2d 259, 266 (Me.1973). Simply put, defendants have failed to demonstrate any prejudice whatsoever stemming from the trial court's jury instructions. Finally, the defendants' proposed instructions on fiduciary obligations and the Massachusetts Small Enterprise Doctrine[2] are not sup-

---

**2.** The parties agreed that their rights and obligations under the limited partnership agreement would be governed by Massachusetts law. *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 328 N.E.2d 505 (1975) imposed fiduciary duties on stockholders in close corporations. It did not deal with limited partnerships. Furthermore, section 107 of the Revised Uniform Limited Partnership Act, adopted in Massachusetts, expressly provides that "a partner may lend money to and transact other business with the limited partnership and,

ported by the facts of this case. Accordingly, the Superior Court's refusal to include them in its charge was not error.

The entry is:

Judgment affirmed.

All concurring.

subject to other applicable law, has the same rights and obligations with respect thereto as a person who is not a partner."  Mass.Gen.Laws Ann. ch. 109, § 7 (West 1991).