1998 ME 134

**HANDY BOAT SERVICE, INC.**

**v.**

**PROFESSIONAL SERVICES, INC.**

**and**

**Kerry S. Luther.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 1998.

Decided June 3, 1998.

Michael J. Gartland (orally,) Seth W. Brewster, Verrill & Dana, L.L.P., Portland, for plaintiff.

Joel C. Martin (orally), Thomas C. Bradley, Petruccelli & Martin, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, LIPEZ, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Professional Services, Inc. and Kerry S. Luther appeal from the summary judgments entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of Handy Boat Service, Inc. on its breach of contract and fraudulent transfer claims. On appeal, they argue that the court erred in construing Luther's personal guarantee, applying the parol evidence rule, and awarding damages on the fraudulent transfer claim. Finding no error with the exception of a damage calculation, we affirm in part and vacate in part.

[¶ 2] On April 20, 1990, Handy Boat Service, Inc. and Professional Services, Inc. executed a lease governing Professional Services's occupation of a waterfront building in Falmouth for the purpose of operating a restaurant. The lease was signed by representatives of both parties, including Kerry S. Luther, president of Professional Services.[1] Luther also signed a separate guarantee of the lessee's obligation.

[¶ 3] Pursuant to the terms of the lease, Professional Services exercised its option to extend the lease for an additional five years on February 7, 1991. In 1994, Luther established a separate corporation, Professional Catering Services, Inc., because he knew there was going to be trouble between Professional Services and Handy Boat.[2] In November 1995, Professional Services vacated the leased premises and transferred property having a value of $60,000 to Professional Catering without any equivalent exchange in value.

[¶ 4] Handy Boat subsequently filed a two-count complaint alleging breach of contract against both Professional Services and Luther. Handy Boat later amended that complaint to include a third count alleging fraudulent transfer against both defendants pursuant to the Uniform Fraudulent Transfer Act, 14 M.R.S.A. §§ 3571–3582 (Supp. 1997). As amended, the complaint sought contract damages for unpaid rent and expenses and double damages for the fraudulent transfer pursuant to 14 M.R.S.A. § 3578(1)(C).

[¶ 5] Concluding that Luther's guarantee applied to the original lease term and the extension, the court granted a summary judgment for Handy Boat on its breach of contract claims against both defendants,

---

1. Luther was a 50% shareholder in Professional Services. His wife owned the other 50%.

2. Luther was a 51% shareholder in Professional Catering. His wife owned the remaining 49%.

awarding $114,083.90 plus interest, costs, and attorney fees. The court also granted a summary judgment for Handy Boat on its fraudulent transfer claim against the defendants, awarding $228,167.80, or double Handy Boat's contract damages, plus interest and costs.[3] This appeal by the defendants followed.

## I. The Personal Guarantee

[¶ 6] Luther argues that his personal guarantee does not apply to the lease as extended by Professional Services because the lease unambiguously defines a one-year lease term and three separate five-year extension terms and the guarantee contains no language explicitly making it applicable to the extension terms.

■■■ [¶ 7] A guarantee is a contract and is governed by the same rules of construction applicable to other contracts. *See Bumila v. Keiser Homes of Maine, Inc.,* 1997 ME 139, ¶ 12, 696 A.2d 1091, 1094. When a guarantee and contract are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, they will be construed together as one legal instrument. *See id.* A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished. *See id.* The interpretation of an unambiguous contract is a question of law. *See Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 516 (Me.1996). We review such questions *de novo. See Collins v. Trius, Inc.,* 663 A.2d 570, 572 (Me.1995).

■■ [¶ 8] The unambiguous language of the lease and the guarantee made Luther's personal guarantee applicable to the optional lease term extensions. The parties executed both the lease and the guarantee for the purpose of operating a restaurant at the Falmouth premises. Section 2.01 of the lease provides Professional Services with "said Premises for a term of one (1) year ... *unless sooner terminated or extended as pro-*

*vided in this Lease* [.]" (Emphasis added). Section 18.01 of the lease further provides Professional Services with options to extend the lease for three successive periods of five years. When Professional Services exercised its option to extend the lease for an additional five-year period, it did so pursuant to the explicit terms of the lease.

[¶ 9] The guarantee provides that Luther "unconditionally guarantees to [Handy Boat] the complete performance of *all obligations* of [Professional Services], its successors or assigns, under the Lease, *without limitation.*" (Emphasis added). The extension of the lease created a continuing obligation under that lease. Construing the guarantee and the lease as one document to effect the parties' intentions concerning the undisputed object to be accomplished, the operation of a restaurant at the Falmouth premises, we conclude that the guarantee unambiguously and unconditionally applies to the extended six-year lease term, without limitation. *Cf. Bumila,* 1997 ME 139 at ¶ 13, 696 A.2d at 1094 (holding that guarantee executed in connection with principal note extended to replacement note, given that the guarantee encompassed "other papers evidencing the obligations hereby guaranteed."). The court therefore committed no error in concluding that Luther's personal guarantee applied to the lease as extended by Professional Services.

## II. The Parol Evidence Rule

[¶ 10] Luther and Professional Services argue that the court erred in refusing to consider extrinsic evidence offered to prove (1) that the inventory of restaurant equipment was not attached to the lease when it was signed, (2) that the inventory was not accurate, and (3) that the condition of the premises and equipment was different than alleged by Handy Boat.

■■ [¶ 11] The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to alter, augment, or contradict the unambiguous language of

---

**3.** At the hearing on Handy Boat's motion for summary judgment, Professional Services and Luther did not dispute that the court could find

them liable to Handy Boat on the fraudulent transfer claim.

an integrated written agreement. *See Clarke v. DiPietro,* 525 A.2d 623, 625 (Me. 1987); *Astor v. Boulos Co.,* 451 A.2d 903, 905 (Me.1982). Application of the rule requires an initial finding that the parties intended the writing to integrate their understandings concerning the subject matter of the agreement. *See Farley Inv. Co. v. Webb,* 617 A.2d 1008, 1010 (Me.1992). To determine whether integration was intended and whether the scope of integration was complete or partial, the court may consider extrinsic evidence. *See Waxler v. Waxler,* 458 A.2d 1219, 1224 (Me.1983). Such consideration, however, is only appropriate where the agreement is ambiguous on the issue of integration. *See id.* Where the language of the agreement is unambiguous with respect to the existence and scope of integration, no extrinsic evidence concerning integration may be presented by the parties or considered by the court.

▆ [¶ 12] Here, section 17.06 of the lease addresses integration, providing that "[n]o oral statement or prior written matter shall have any force or effect. [Professional Services] agrees that it is not relying on any representations or agreements other than those contained in this Lease. This Lease shall not be modified or cancelled except by writing subscribed by all parties." Through this unambiguous integration clause, the parties clearly expressed their intention to treat the lease as the complete integration of their agreement. The court therefore correctly concluded that it could not consider evidence extrinsic to that clause in deciding whether the contract was integrated.

▆ [¶ 13] The defendants next argue that, even if the lease is wholly integrated, the ambiguity of certain provisions within the lease required the court to consider extrinsic evidence concerning the parties' intentions as to those provisions. Extrinsic evidence concerning a specific provision of an integrated agreement may not be considered unless the court determines the language of that provision to be ambiguous. *See McCarthy v. U.S.I. Corp.,* 678 A.2d 48, 51–52 (Me.1996) (extrinsic evidence may only be admitted to

show the parties' intent after contract language is first found to be ambiguous); *see also* 3 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 579 (1960) (parol evidence admissible for the purpose of interpreting an otherwise integrated agreement).

▆ [¶ 14] The defendants contend that no inventory was attached to the lease when Luther signed it, that the inventory they later received was not accurate, and that neither the premises nor the inventory were in good condition, either at the execution of the lease or at the time they vacated the premises. Section 1.01 of the lease, however, describes the inventory as "attached hereto, made a part hereof and marked as Exhibit C[.]" As for the inventory's accuracy, section 5.01 of the lease states that Professional Services "shall be deemed to acknowledge by entry thereupon that said Premises, including the FF & E, are in then good and satisfactory order, repair and condition[.]" [4] Finally, with respect to the condition of the premises and the inventory, subsection 5.01(b) states that Professional Services shall "maintain, repair, replace, and keep the Premises, including ... the FF & E, in as good order, repair and condition as the same are in at the commencement of said term[.]"

[¶ 15] The language of sections 1.01, 5.01, and 5.01(b), along with that of the integration clause in section 17.06, supports the court's conclusion that the lease was both integrated and unambiguous with respect to the inventory's attachment, its accuracy, and the condition of both the premises and the inventory at the time the lease was executed. Luther and Professional Services, having signed the lease, cannot now assert that the inventory was not attached. The court committed no error in applying the parol evidence rule to preclude consideration of extrinsic evidence on these issues.

III. Fraudulent Transfer Damages

▆ [¶ 16] Finally, the parties agree that the court erred in using Handy Boat's contract damages as the basis for its award of fraudulent transfer damages pursuant to 14 M.R.S.A. § 3578(1)(C)(3). Section 3578(1)(C)(3) provides that a creditor in a

---

**4.** In the lease, FF & E refers to furniture, fixtures and equipment.

fraudulent transfer action may obtain "[d]amages in an amount not to exceed double *the value of the property transferred or concealed.*" (Emphasis added). The value of the property transferred was $60,000. Although Handy Boat asks this Court to conclude that an additional $2,790 was fraudulently transferred, it failed to reference this additional amount in its Rule 7(d)(1) statement. In ruling on a motion for summary judgment, "the court is to consider *only* the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements." *Gerrity Co., Inc., v. Lake Arrowhead Corp.,* 609 A.2d 293, 295 (Me.1992) (emphasis added). On the record before us, therefore, the additional $2,790 must be disregarded in the computation of the damages on Count III.

The entry is:

Judgment on Counts I and II affirmed. Judgment on Count III vacated and remanded for further proceedings consistent with this opinion.

