STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-99-243

REC-CUM - 6/13/2000

DINE RIGHT COMPANY, INC. &                    )
DAVID TURIN,                                  )
                                              )
                Plaintiffs,                   )
                                              )        **ORDER ON DEFENDANTS' MOTION**
v.                                            )        **FOR PARTIAL SUMMARY**
                                              )        **JUDGMENT**
MICHAEL MASTRONARDI,                          )
164 REALTY, LLC, &                            )
164 REALTY, INC.,                             )
                                              )
                Defendants.                   )

## FACTUAL BACKGROUND

Plaintiff David Turin ("Turin") is the owner of a restaurant, once located at 164 Middle Street in Portland. He leased the property from either 164 Realty, LLC, or 164 Realty, Inc. Defendant Michael Mastronardi ("Mastronardi"), the principal and owner of 164 Realty, LLC and 164 Realty, Inc., told Plaintiffs that the tenants who had occupied the property previously had made annual sales of $1.4 million. PSMF ¶1. Plaintiffs also assert that Mastronardi told them that the premises had one utility meter. Id.

The parties executed a lease on or about May 1, 1993. DSMF ¶1, PSMF 1. A few months later, they signed an amended lease. DSMF ¶2. The amended lease extended the term of the lease from two years to twelve years. PSMF ¶2. The lease payments were to be determined as a percentage of gross sales, with a floor of $124,800 bianually. PSMF ¶1. Both lease agreements contained an integration clause, entitled "Entire Agreement Herein" which provided

> This Lease contains the entire agreement of the parties and no representations, inducements, promises or agreements between the parties not embodied herein shall be of any force or effect.

See Lease, Article 22.C.

Plaintiffs were never able to generate $1.4 million in annual sales. PSMF ¶1. According to Defendants' investigations, a prior tenant made $1.4 million in sales only in 1987. Id.; Mastronardi Dep. at 46, 50, 52. That same tenant made about $1.2 million the next year, and made less than $1 million in 1991, when it could not make its rent payments. Mastronardi Dep. at 50-52. Additionally, the next tenant left when it failed to make rent payments (in amounts similar to those involved in this case) because "business wasn't good enough." Mastronardi Dep. at 78-79.

Furthermore, when Plaintiffs were in the process of deciding whether to enter into the lease, Turin asked the Defendants' building manager about the utility information, and was provided with the account number for the electricity. Turin Dep. at 69-70; Mastronardi Dep. at 40. Turin checked the account [presumably the bill] and "deemed the number ... suitable." Id. He later discovered, however, that the property had three utility accounts governed by three utility meters. Id. Plaintiffs allege that the presence of three meters caused the utility bill to be $1290 per month more than they had anticipated based on their belief that only one meter existed. PSMF ¶1.

Plaintiffs filed a complaint in the Superior Court against Defendants on April 20, 1999. Defendants allege that on May 15, 1999, Plaintiffs vacated the premises. See Counterclaim, ¶12. Plaintiff David Turin asserts that he relied on Mastronardi's

representations about the prior annual sales and on the building manager's representations about the utility meter in agreeing to the rent formula. Id. The Complaint alleges that the Defendants fraudulently induced Plaintiffs to enter into the lease agreement (Count I) by making false representations as to the rent of prior tenants and the existence of only one utility meter. Count II alleges that Defendants failed to provide safe premises and Count III alleges libel. Defendants now move for summary judgment on Count I of the Complaint.

## DISCUSSION

Normally, the parol evidence rule exists to "exclude from judicial consideration extrinsic evidence offered to alter, augment, or contradict the unambiguous language of an integrated written agreement." Handy Boat Service v. Professional Services, Inc., 1998 ME 134, ¶11, 711 A.2d 1306, 1308-09 (unambiguous integration clause prohibited modification of the contract). Evidence that a party was fraudulently induced to enter a contract, however, has traditionally been admissible despite the existence of an integration clause in a contract. See Harriman v. Maddocks, 518 A.2d 1027, 1029 (Me. 1986) (implicitly reasoning that there are (at least) two ways parol evidence would be admissible: by showing (1) fraud in the inducement of the contract, and (2) that the contract is actually not integrated); see also Ferrell v. Cox, 617 A.2d 1003, 1006 (Me. 1992) ("Maine precedent is clear.... [p]arol evidence of fraudulent inducement may be introduced to show that a signed document does not reflect the intent of the parties").

Although Maine has never explicitly held that fraudulent inducement may

3

be proven despite the presence of an integration clause in a contract, some older Maine law does support this contention. Nelson v. Leo's Auto Sales, 158 Me. 368, 371, 185 A.2d 121, 122-23 (Me. 1962). In Nelson, the parties signed two purchase and sale agreements for an auto. The Plaintiff brought suit alleging that the defendant fraudulently misrepresented the age of the car, and was awarded damages of $2000. The Law Court cited 17 C.J.S. Contracts, §595, to the effect that "a provision that the writing contains the entire agreement does not prevent one party from asserting that the making of the contract was induced by fraud...," in holding that the parol evidence was properly admitted. See also Restatement (Second) Contracts, §214(d) (parol evidence admissible to show fraud). Defendants attempt to distinguish Nelson by arguing that the case did not involve an integration clause. Although the Law Court did not discuss whether the purchase and sale agreement contained an integration clause, its citation of C.J.S. shows that such a clause presumably would not have changed its holding.

Other jurisdictions have held that neither an integration clause nor the parol evidence rule prevents evidence of representations outside the written contract to show fraud. See, e.g., Environmental Systems, Inc. v. Rexham Corp., 624 So.2d 1379, 1381-83 (Ala. 1993) (in action for tort of fraud, parol evidence rule is inapplicable and plaintiff may recover damages despite existence of integration clause); Wagner v. Rao, 885 P.2d 174, 177-78 (Ariz. Ct. App. 1994) (finality encouraged by integration clauses and parol evidence rule must give way when fraud is alleged, to promote "honest dealings between the parties"); McEvoy Travel Bureau, Inc. v. Norton Co.,

4

563 N.E.2d 188, 193 n.5 (Mass. 1990); Hogan v. Riemer, 619 N.E.2d 984 (Mass. App. Ct. 1993); 3 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 578, at 405 n.42 (3d ed. 1960 & Supp. 1999).

Defendants assert that the integration clause here is somehow more significant than other such clauses because it includes a provision that the parties may not rely on any inducements made by the parties. This argument has little merit. The integration clause in this case does not differ from those in other cases where the court held that parol evidence is admissible; it is a standard integration clause. See Wagner, 885 P.2d at 177; Environmental Systems, 624 So.2d at 1381.

Since Plaintiffs are not precluded from introducing evidence regarding fraudulent inducement, the Defendants' Motion for Partial Summary Judgment must be denied.

The entry is

Defendants' Motion for Summary Judgment on Count I of the Complaint is DENIED.

Dated:       June 13, 2000

Robert E. Crowley
Justice, Superior Court

5

Date Filed __4-22-99__ ___CUMBERLAND___ Docket No. ___CV99-243___
County

Action ___CONTRACT_____

DINE RIGHT COMPANY, INC.                          MICHAEL MASTRONARDI
DAVID TURIN                                       164 REALTY LLC
                                                  164 REALTY, INC.

vs.

| Plaintiff's Attorney | Defendant's Attorney ~~HAROLD J. FRIEDMAN ESQ~~ CHRISTOPHER TAINTOR |
|---|---|
| William D. Robitzek, Esq. 784-3576<br>PO Box 961<br>Lewiston, ME 04243-0961 | MARK G. LAVOIE ESQ 774-7000 (A11)<br>PO BOX 4600, PORTLAND ME 04112<br><br>HAROLD FRIEDMAN ESQ (CO-COUNSEL)  761-0900<br>FRIEDMAN & BABCOCK<br>PO BOX 4726, PORTLAND ME 04112-4726 |

| Date of Entry | |
|---|---|
| 1999<br>Apr. 29 | Received 4-22-99.<br>Summary sheet filed.<br>Complaint filed. |
| "      " | |
| June 28 | Received 06-28-99:<br>Summonses filed.<br>164 Realty Inc. served to Michael Mastronardi on 06-16-99. |
| "      "<br>"      " | 164 Realty LLC  served to Michael Mastronardi on 06-24-99.<br>Michael Mastronardi served on 06-24-99. |
| July 06 | Received 07-06-99:<br>Defendants Michael Mastronardi, 164 Realty, LLC, and 164 Realty, Inc.'s Answer and Counterclaim filed. |
| "      " | Defendants' Counterclaim Summary Sheet filed. |
| July 14 | Received  7-12-99.<br>Scheduling Order filed. (Crowley, J.)<br>Scheduling Order filed. Discovery deadline is    3-12-00.<br>7-14-99   copy mailed to: William Robitzek and Harold Friedman Esqs. |
| July 29 | Received 7-28-99.<br>Plaintiffs' Reply to Counterclaim of 164 Realty LLC and Crossclaim Against Michael Matronardi filed. |
| "" | $300.00 jury fee paid. |
| Aug. 04 | Received 08-03-99:<br>Plaintiff's  Summary Sheet for Crossclaim filed. |