STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AUBSC-AP-16-008

RECEIVED & FILED

JAN 2 3 2017

ANDROSCOGGIN
SUPERIOR COURT

SENIORSPLUS,

    Petitioner,

v.

MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

    Respondent.

ORDER ON PETITIONER'S MOTION
TO TAKE ADDITIONAL EVIDENCE

Presently before the court is Petitioner SeniorsPlus's motion requesting that this case be remanded to the Maine Department of Health and Human Services ("DHHS") for the taking of additional evidence before the agency. Based on the following, Petitioner's motion is granted.

## I. BACKGROUND

Petitioner SeniorsPlus, also as known Elder Independence of Maine, is a private, non-profit corporation registered to do business in the State of Maine. (R. Tab A at 5.) On July 1, 2008, SeniorsPlus entered into a contract with DHHS's Office of Elder Services ("OES") for the 2009 fiscal year, contract number OES-09-351 (the "2009 contract"). (Id.) Under the 2009 contract, SeniorsPlus agreed to provide certain services, including home care management services for DHHS clients, and payment processing for third parties who provide direct home-based care ("HBC") services to DHHS clients. (Id.) The 2009 Contract was amended several times to increase the total dollar amount of the contract and to extend the contract through June 30, 2010. (Id.) The total amount of the 2009 contract through June 30, 2010, was $17,336,325. (Id.)

Pursuant to its terms, the 2009 contract was subject to the Maine Uniform Accounting and Auditing Practices for Community Agencies ("MAAP"), 10-144 C.M.R.

ch. 30, *et seq.* (*Id.*) Pursuant to MAAP, DHHS conducted an audit of the 2009 contract in 2013. (*Id.* at 6.) On June 28, 2013, DHHS issued a report that, according to its audit, DHHS had overpaid SeniorsPlus $1,108,787 under the 2009 contract and ordered SeniorsPlus to reimburse DHHS in that amount. (*Id.*)

SeniorsPlus sent a letter of appeal to the director of the DHHS's Division of Audit on August 12, 2013, asserting that DHHS's determination that it had overpaid SeniorsPlus was in error. (R. Tab DHHS-7.) SeniorsPlus asserted: (1) that approximately $437,008 in payments from DHHS to SeniorsPlus, though received during the 2009 fiscal year, were for a prior contract and incorrectly included in the agency's 2013 audit; and (2) that the remaining $670,645 in alleged overpayments were the result of DHHS's use of an improper settlement methodology. (*Id.*) DHHS's Division of Audit denied the appeal on August 8, 2014. (R. Tab DHHS-8.)

On October 2, 2014, SeniorsPlus filed a letter of appeal and request for a hearing with DHHS's office of administrative hearings. (R. Tab DHHS-9.) An administrative hearing before a DHHS hearing officer was held on November 16, 2015. (R. Tab A at 1.) On February 16, 2016, the hearing officer issued a recommended decision upholding the agency's determination that SeniorsPlus owed the agency $1,108,787 in reimbursement. (*Id.* at 6.) SeniorsPlus filed exceptions to the recommended decision on March 8, 2016. (R. Tab B.) The Commissioner of DHHS issued final decision adopting the hearing officer's recommended decision on April 13, 2016. (R. Tab C.)

Pursuant to §11002 of the Maine Administrative Procedures Act ("APA") and Maine Rule of Civil Procedure 80C, SeniorsPlus filed a petition for review of final agency action with this court on May 20, 2016. SeniorsPlus asserts the following: (1) the hearing officer violated the provisions of APA and committed errors of law by improperly excluding relevant evidence, prohibiting SeniorsPlus from presenting

evidence and argument on relevant issues, and failing to require DHHS to produce employees with relevant evidence; (2) the hearing officer committed errors of law in interpreting the 2009 contract and finding that DHHS was not estopped by its promises to SeniorsPlus; (3) the hearing officer's interpretation of "cost sharing" was not supported by substantial evidence in the record; and, (4) the hearing officer's decision was arbitrary, capricious, and an abuse of discretion because the hearing officer repeatedly misstated the issues presented, denied SeniorsPlus access to relevant and material evidence, and denied SeniorsPlus the opportunity to present relevant and material evidence and witnesses. (Pet. ¶¶ A-E.)

Following an extension of time, the certified record was filed on July 18, 2016. SeniorsPlus filed this motion to take additional evidence along with an offer of proof on August 31, 2016. The court granted DHHS's motion to allow the late filing of its opposition to the motion to take additional evidence on October 5, 2016. SeniorsPlus filed a reply on October 24, 2016.

## II.    STANDARD OF REVIEW

Pursuant to Maine Rule of Civil Procedure Rule 80C(e) and § 11006(1) of the APA, a party seeking judicial review of an agency action may file a motion with the court requesting that the court order the taking of additional evidence before the agency. M.R. Civ. P. 80C(e); 5 M.R.S. § 11006(1)(B). The motion shall be supported by a "detailed statement, in the nature of an offer of proof, of the evidence intended to be taken." M.R. Civ. P. 80C(e). The moving party's statement must be sufficient to permit the court to determine whether the taking of additional evidence is appropriate. *Id.* After hearing, the court shall issue an appropriate order specifying the future course of proceedings. *Id.*

Section 11006(1)(B) of the APA provides that the court may order the taking of additional evidence by the agency if: (1) the court finds that that the additional evidence is necessary to deciding the petition for review; or (2) if the moving party demonstrates (a) that the additional evidence is material to the issues presented in the review; and (b) the additional evidence could not have been presented or was erroneously disallowed in the proceedings before the agency. 5 M.R.S. § 11006(1)(B). After the taking of additional evidence, the agency may modify its findings and decisions. *Id.* The agency shall file the additional evidence and any new findings or decisions with the court, which shall become part of the record for review. *Id.*

Under the APA, an agency need not observe the rules of evidence observed by courts. *Id.* § 9057(1). Generally, evidence shall be admitted before an agency "if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." *Id.* § 9057(2). An agency may exclude irrelevant or unduly repetitious evidence. *Id.* DHHS's own Administrative Hearing Regulations mirror the APA: evidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs; evidence that is irrelevant or unduly repetitious may be excluded; and formal rules of evidence shall not be observed. 10-144 C.M.R. ch. 1, § VII (A)(1)-(3). DHHS's Administrative Hearing Regulations also state, "Evidence which may reasonably be construed as relevant and which is not otherwise unduly repetitious shall be admitted." *Id.* § VII (A) (4).

DHHS's Administrative Hearing Regulations further provide that a hearing officer's decision "must be based on agency regulations." *Id.* § VII (B)(3)(a). Where the agency's regulations are ambiguous or silent, reference to other sources of law for guidance is appropriate. *Id.* § VII (B)(3)(b). "When a hearing officer relies upon sources

of law other than the agency's regulations, the written decision shall indicate the source of law and the reasons for that reliance." *Id.*

## III. ANALYSIS

According to the hearing officer's recommended decision, the two issues before the hearing officer were: (1) whether DHHS was correct in its determination that, for the 2009 fiscal year, SeniorsPlus failed to follow the proper "cost-sharing" settlement method illustrated in the in 2009 contract, thereby owing DHHS $1,108,787 in reimbursement; and (2) whether the department was correct in its determination that SeniorsPlus must return $437,008 to the DHHS because $437,008 was an overpayment under the 2009 contract.[1] (R. Tab A at 3.)

At the hearing, SeniorsPlus asserted the following arguments: (1) that the approximately $437,008 were not overpayments under the 2009 contract because those amounts were payments made during the 2009 fiscal year for services actually rendered during the 2008 fiscal year and attributable to the prior contract between SeniorsPlus and EOS for the 2008 fiscal year, contract number OE-08-051 (the "2008 contract"); (2) that it continued to provide services during the 2008 fiscal year in detrimental reliance on DHHS's representations that it would be paid for those services during the 2009 fiscal year; and (3) that the remaining $670,645 in alleged overpayments were the result of DHHS incorrectly interpreting the term "cost sharing" in the 2009 contract to mean "cost settling" or "cost based" and incorrectly applying a "cost settling" methodology in its audit of the 2009 contract. (R. Tab A at 9-11.)

---

[1] SeniorsPlus objected to this statement of the issues by the hearing officer. (R. Tab SeniorsPlus-2 at 2.) However, that objection is not at issue in this motion for the taking of additional evidence.

SeniorsPlus asserts that the hearing officer erroneously excluded evidence that was material to each of its arguments. (Pet'r Mot. Add'l Evid. 7-10.) The court addresses each issue in turn.

A.     The $437,008 Payment

Prior to the hearing, SeniorsPlus requested that DHHS produce all emails sent or received by five present or former DHHS employees identified as witnesses between April 1, 2008, and March 31, 2009, referring to any DHHS contract with SeniorsPlus or any amounts or payments claimed by or paid to SeniorsPlus under any contract with DHHS. (R. Tab HO-7 at 1.) The hearing officer requested that both parties file pre-hearing briefs addressing SeniorsPlus's requests. (Id.)

On April 9, 2015, the hearing officer issued pre-hearing order stating that she would not permit SeniorsPlus to present evidence or testimony related to the 2008 contract. (R. Tab HO-8 at 2-3.) The hearing officer held that SeniorsPlus could not submit evidence regarding the 2008 contract because SeniorsPlus had accepted the audit of the 2008 contract on November 18, 2011, that the sixty-day appeal period of that audit had long expired, and permitting SeniorsPlus to present evidence of regarding the 2008 contract would be "an end run around" DHHS's appeal regulations. (Id. at 2.) Because the hearing officer disallowed any evidence or testimony regarding the 2008 contract, DHHS did not produce any emails relating to the 2008 contract or the payments during the 2009 fiscal year totaling $437,008 that were allegedly allocated to the 2008 contract. (R. Tab D, Hr'g Tr. 3:23-5:9.)

The hearing officer misconstrued SeniorsPlus's argument regarding the alleged $437,008 overpayment and the 2008 contract. In its pre-hearing brief, SeniorsPlus stated:

...SeniorsPlus is asserting that these two payments (totaling $437,008) that were received during fiscal year 2009, were payments for services provided during the fiscal year that ended June 30, 2008, under previous contracts. Further, SeniorsPlus asserts that these payments were properly reported in the 2008 contract settlement, and that they cannot be considered overpayments under the 2009 contract, because they were not payments made pursuant to the 2009 contract. Once these payments were properly credited to the 2008 contract, which was settled in 2011, there was no overpayment or underpayment, and SeniorsPlus received the correct amount. Now, the audit division is trying to take payments that were properly allocated to the 2008 contract, and treating them as overpayments in 2009, while arguing that SeniorsPlus cannot challenge the allocation of these payments to 2009 (which would result in an overpayment) because it did not appeal the 2008 settlement which was correct.

(R. Tab HO-14 at 2.) It is clear that SeniorsPlus was not challenging the 2011 audit and settlement of the 2008 contract. SeniorsPlus expressly conceded that the 2011 audit and settlement were correct. Rather, SeniorsPlus was asserting that the alleged overpayments were properly credited to the 2008 contract and included in the 2011 settlement.

According to its offer of proof, SeniorsPlus was prepared to offer testimony from Debra Parry, SeniorPlus's former finance director responsible for contract negotiations and settlements from 2008 through 2012, and Diana Scully, Director of OES from 2007 to 2011, who oversaw the negotiation of the contracts with SeniorsPlus. (Pet'r Offer of Proof 1.) SeniorsPlus asserts its witnesses would have testified to the following: that from 2003 through at least 2008, it was common practice for OES to agree that SeniorsPlus should continue to provide services to clients though contract funds had been exhausted before the end of the contract year, and that OES paid for those services out of appropriations for the next fiscal year; that those agreements were done orally or through email; that OES did pay SeniorsPlus from funds for the following fiscal year; that OES did not want services to its clients interrupted; that SeniorsPlus had two outstanding accounts receivable totaling $437,008 at the end of the 2008 fiscal year that

were paid using 2009 fiscal year funds; that SeniorsPlus was told by DHHS to apply those payments to the 2008 contract; that SeniorsPlus's settlement report for fiscal year 2008 included the $437,008 as payments received under the 2008 contract; that there was no overpayment or underpayment on the 2008 contract and no reason to appeal the 2011 audit or settlement; that SeniorsPlus did not include the $437,008 in its 2009 fiscal year settlement report because it had been included in the 2008 fiscal year settlement; and, that DHHS's inclusion of the $437,008 in the 2009 fiscal year audit created an "overpayment" because the amount had been counted twice. (Pet'r Offer of Proof ¶¶ a-m.) SeniorsPlus also asserts that it would have offered documentary evidence to support the above testimony, and that SeniorsPlus had requested additional documents, including emails, relevant to the above testimony that DHHS did not produce due to the hearing officer's April 9, 2015 order. (*Id.* at 5.)

The anticipated testimony set forth in SeniorsPlus's offer of proof is clearly material to the issue of whether the $437,008 were overpayments under the 2009 contract and to SeniorsPlus's argument that the $437,008 in payments during the 2009 fiscal year were for services rendered during the 2008 fiscal year and properly allocated to the 2008 contract. Because DHHS hearings do not observe strict rules of evidence and because DHHS's Hearing Regulations state that any evidence "which may reasonably be construed as relevant" shall be admitted, it was erroneous for the hearing officer to exclude all evidence regarding the 2008 contract. *See* 10-144 C.M.R. ch. 1, § VII (A)(4). The hearing officer should have allowed SeniorsPlus to present evidence regarding whether the $437,008 in payments during the 2009 fiscal year were actually

an overpayment or whether those payments were for services actually rendered during the 2008 fiscal year and attributable to the 2008 contract.[2]

Moreover, when acting in an appellate capacity pursuant to Rule 80C and the APA, the court reviews the agency's decision for abuse of discretion, error of law, or findings not supported by the evidence. *Guar. Tr. Life Ins. Co. v. Superintendent of Ins.*, 2013 ME 102, ¶ 16, 82 A.3d 121; 5 M.R.S. § 11007(4)(C). The anticipated testimony and evidence set forth in the offer of proof is clearly necessary to the court's eventual decision on SeniorsPlus's petition pursuant to Rule 80C, particularly whether the hearing officer committed errors of law by excluding evidence and prohibiting SeniorsPlus from presenting argument on certain issues and whether the decision was arbitrary, capricious, or an abuse of discretion. (Pet. ¶¶ A-B, E.)

B.  Estoppel

The hearing officer found that SeniorsPlus had expressly raised the issue of estoppel. (R. Tab A at 10.) In its post-hearing brief, SeniorsPlus asserted, "DHHS is estopped by its representations and promises to SeniorsPlus, upon which SeniorsPlus relied to its detriment by continuing to provide services based on assurances by DHHS that SeniorsPlus would be paid." (R. Tab SeniorsPlus-2 at 6.) In her recommended decision, the hearing officer stated:

> The hearing officer presumes that Seniors Plus is raising this issue based upon its offer of proof that there were oral agreements between the Department and Seniors Plus regarding the extension of services when funds had been exhausted. Specifically, Seniors Plus sought to show that the Office of Elder Services had agreed that a payment from the Department to Seniors Plus of $437,008.00 provided in 2009 was to be applied to the 2008 contract.

(R. Tab A at 11.)

---

[2] The court expresses no opinion whether some of the evidence SeniorsPlus sought to introduce may still be excluded as "unduly repetitious." *See* 5 M.R.S. ¶ 9057(2); 10-144 C.M.R. ch. 1, § VII (A)(2).

Under DHHS's Administrative Hearing Regulations, the hearing officer was authorized to address the issue of equitable estoppel. *See* 10-144 C.M.R. ch. 1, § VII (B)(6). Pursuant to § VII (B)(3)(b) of DHHS's Administrative Hearing Regulations, the hearing officer properly set forth the applicable law regarding the doctrine of estoppel in her recommended decision. (R. Tab A at 11); *see* 10-144 C.M.R. ch. 1, § VII (B)(3)(b).

"[T]he doctrine of equitable estoppel may prevent a governmental entity from discharging governmental functions or asserting rights against a party who detrimentally relies on statements or conduct of a governmental agency or official." *State v. Brown*, 2014 ME 79, ¶ 14, 95 A.3d 82. However, the courts views claims of equitable estoppel against government agencies with caution. *Mrs. T. v. Comm'r of the Dept. Health & Human Servs.*, 2012 ME 13, ¶ 10, 36 A.3d 888. Claims of estoppel against government agencies are "carefully and sparingly applied," particularly when the application would have an adverse impact on the state treasury. *Id.* (citation omitted).

To prove equitable estoppel against a governmental entity, the party must demonstrate: (1) the governmental official or agency made misrepresentations, whether by misleading statements, conduct, or silence, that induced the party to act; (2) the party relied on the government's misrepresentations to its detriment; and (3) the party's reliance was reasonable. *Brown*, 2014 ME 79, ¶ 14, 95 A.3d 82. The doctrine of estoppel requires "clear and satisfactory proof." *Id.* ¶ 15 (internal quotation marks and citation omitted). "In assessing a claim of estoppel against a government agency, the court considers "the totality of the circumstances, including the nature of the particular governmental agency, the particular governmental function being discharged, and any considerations of public policy arising from the application of estoppel to the governmental function." *Id.* ¶ 14 (citation omitted).

The hearing officer concluded that SeniorsPlus "failed to meet the final element – that its reliance was reasonable." (R. Tab A at 11.) The hearing officer stated, "[I]t was not reasonable for SeniorsPlus to rely on alleged oral misrepresentations by someone in the Department that contradicted or was not in accordance with the MAAP rules or the Contract." (R. Tab A at 11.)

As previously discussed, according to its offer of proof, SeniorsPlus was prepared to offer testimony from Debra Parry and Diana Scully that it was common practice for OES to agree that SeniorsPlus should continue to provide services to clients though contract funds had been exhausted before the end of the contract year; that it was common practice for OES to pay for those services out of appropriations for the next fiscal year; that those agreements were done orally or through email; that OES did pay SeniorsPlus from funds for the following fiscal year; that OES did not want services to its clients interrupted; that SeniorsPlus had two outstanding accounts receivable totaling $437,008 at the end of the 2008 fiscal year that were paid using 2009 fiscal year funds; and that SeniorsPlus was told by DHHS to apply those payments to the 2008 contract. (Pet'r Offer of Proof ¶¶ a-i.) SeniorsPlus also asserts that it would have offered documentary evidence to support the testimony discussed above, and that SeniorsPlus had requested additional documents, including emails, relevant to the above testimony that DHHS did not produce due to the hearing officer's April 9, 2015 order. (*Id.* at 5.)

The anticipated testimony set forth in SeniorsPlus's offer of proof is clearly material to the issues of whether DHHS officials made misrepresentations to SeniorsPlus and whether SeniorsPlus reliance on those representations was reasonable. *See Brown*, 2014 ME 79, ¶ 14, 95 A.3d 82. Thus, the anticipated testimony was material to the issue of estoppel. However, the hearing officer disallowed all testimony or

evidence regarding the 2008 contract. (R. Tab HO-8 at 2-3.) Because DHHS hearings do not observe strict rules of evidence and because DHHS's Hearing Regulations state that any evidence "which may reasonably be construed as relevant" shall be admitted, it was erroneous for the hearing officer to exclude all evidence regarding the 2008 contract. *See* 10-144 C.M.R. ch. 1, § VII (A)(4). The hearing officer should have allowed SeniorsPlus to present evidence regarding whether DHHS officials made representations and promises to SeniorsPlus and whether SeniorsPlus reasonably relied on those representations to its detriment by continuing to provide services to DHHS clients.[3]

Furthermore, the anticipated testimony and evidence set forth in the offer of proof is clearly necessary to the court's eventual decision on SeniorsPlus's petition pursuant to Rule 80C, particularly whether the hearing officer committed errors of law in finding that DHHS was not estopped by its promises to SeniorsPlus and whether the decision was arbitrary, capricious, or an abuse of discretion. (Pet. ¶¶ C, E); *see Guar. Tr. Life Ins. Co.*, 2013 ME 102, ¶ 16, 82 A.3d 121; 5 M.R.S. § 11007(4)(C).

C.    The "Cost Sharing" Methodology

In its appeal to the agency, SeniorsPlus asserted that the 2009 contract contained three different payment/settlement methods for different services: "cost based," "unit cost/fee for service settlement," and "provider payments." (R. Tab DHHS-7.) SeniorsPlus asserted that DHHS incorrectly applied a "cost based" or "cost settling" methodology to payments received by SeniorsPlus from DHHS for direct HBC services to clients in its audit of the 2009 contract. (R. Tabs DHHS-7, HO-14 at 1-2.) SeniorsPlus

---

[3] Again, the court expresses no opinion whether some of the evidence SeniorsPlus sought to introduce may still be excluded as "unduly repetitious." *See* 5 M.R.S. ¶ 9057(2); 10-144 C.M.R. ch. 1, § VII (A)(2).

asserted that direct HBC services to clients were to be reimbursed and settled using the "unit cost/fee for service settlement" method. (R. Tabs DHHS-7.)

Rider F-2 to the 2009 contract identifies the audit methodology to be used in settling the agreement between the DHHS and SeniorsPlus. (R. Tab DHHS-4a.) According to Rider F-2, a "cost sharing" methodology was to be applied to the settlement of direct service payments. (*Id.*) Thus, SeniorsPlus' argument turns on the meaning of the term "cost sharing" in the 2009 contract.

DHHS asserted that MAAP use the terms "cost share" and "cost settle" interchangeably. (R. Tab DHHS-14 at 6.) Thus, according to DHHS, "cost settling" was the appropriate methodology for the audit. (*Id.*) SeniorsPlus asserted that "cost sharing," as used in the 2009 contract, is different from "cost settling" or "cost based." (R. Tab SeniorsPlus-2 at 5.) SeniorsPlus asserted that "cost sharing" refers to the sharing of costs "between or among multiple revenue sources when there is more than one source of revenue in a program." (*Id.*) SeniorsPlus further asserted that, because direct HBC services were completely state-funded, there were no other sources of revenue with which to share costs. (*Id.*) Thus, according to SeniorsPlus, the meaning of "cost sharing" in the 2009 contract is ambiguous and extrinsic evidence regarding the intent of the individuals that made the contract should be admitted. (*Id.*)

At the hearing, SeniorsPlus sought to present evidence regarding the intent of the individuals who negotiated the 2009 contract, particularly the methodology to be used to settle and reconcile the payments and the meaning of the term "cost sharing" in the 2009 contract. (R. Tab D, Hr'g Tr. 191:5-195:23.) However, the hearing officer disallowed such evidence. (*Id.*) In her recommended decision, the hearing officer stated that she disallowed the evidence "because the 2009 Contract speaks for itself, and does not require any parol evidence for interpretation." (R. Tab A at 7.) The hearing

officer stated, "It is settled law that a fact finder not look beyond the four corners of a contract so long as the contract is clear and unambiguous." (*Id.*) The hearing officer stated that she "does not find any ambiguity in the 2009 Contract."[4] (*Id.*)

Although the 2009 agreement contained a merger clause stating, "this document contains the entire Agreement of the parties and neither party shall be bound by any statement or representation not contained herein," that does not completely foreclose any consideration of extrinsic evidence. (R. Tab DHHS-4(a).) If specific provisions of an integrated agreement are found to be ambiguous, a court may still consider extrinsic evidence concerning the parties' intent in order to interpret those provisions contained in an otherwise integrated agreement. *Handy Boat Serv. v. Prof'l Servs.*, 1998 ME 134, ¶ 13, 711 A.2d 1306.

Though the hearing officer concluded the 2009 contract was unambiguous, her recommended decision demonstrates that "cost sharing" was actually ambiguous and that the hearing officer relied on extrinsic evidence presented by DHHS in interpreting the term. The hearing officer's recommended decision does not identify any provision in the 2009 contract defining the term "cost sharing" (*Id.* at 6-10.) The hearing officer expressly noted that: "neither party provided any rules nor regulations that define cost settling or cost sharing." (R. Tab A at 9.) The hearing officer specifically cited testimony from Tony Madden, Deputy Director of DHHS's Division of Audit, who

---

[4] DHHS's Administrative Hearing Regulations are silent regarding the interpretation of contracts and the admissibility of extrinsic evidence. *See* 10-144 C.M.R. ch. 1. The rules of contract interpretation and the admission of extrinsic evidence relied on by the hearing officer in this case are clearly derived from principles of contract law. *See Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 10, 748 A.2d 457; *Handy Boat Serv. v. Prof'l Servs.*, 1998 ME 134, ¶¶ 11-13, 711 A.2d 1306. As previously discussed, § VII (B)(3)(b) of DHHS's Administrative Hearing Regulations states, "When a hearing officer relies upon sources of law other than the agency's regulations, the written decision shall indicate the source of law upon which the hearing officer relied." 10-144 C.M.R. ch. 1, § VII (B)(3)(b). The court notes that the hearing officer in this case failed to properly indicate the source of law upon which she relied regarding her interpretation of the 2009 contract in her recommended decision.

stated that the terms "cost sharing" and "cost settled" "mean the same thing and are used interchangeably." (*Id.*); *see* (R. Tab D, Hr'g Tr. 75:1-4, 135:25-137:21.) The hearing officer concluded that DHHS's interpretation of "cost sharing" was correct and that "cost settling" was the correct methodology for auditing the 2009 contract. (R. Tab A at 9.) The hearing officer stated that SeniorsPlus "did not provide a foundation for its interpretation of cost sharing." (*Id.*)

According to its offer of proof, SeniorsPlus was prepared to offer testimony from Debra Parry and Diana Scully regarding the following: that direct HBC services were 100% state-funded; that there were no MaineCare funds involved in the 2009 contract; that the cost settlement methodology used by DHHS in the 2013 audit incorrectly "removed" more than $70 million MaineCare funds related to a different program; that it was the expectation and intention of SeniorsPlus and OES when the 2009 contract was negotiated that the settlement method for direct HBC services would be to subtract SeniorsPlus' actual payments to third-party providers from the total amount paid by OES to SeniorsPlus for direct services; that neither OES nor SeniorsPlus officials who negotiated the 2009 contract expected any portion to of the contract to be subject to "cost settlement" methodology; that the parties who executed the 2009 contract marked an "x" on Rider F-2 next to "cost sharing" based on their understanding it meant that SeniorsPlus' payments for direct HBC services would be settled by subtracting SeniorsPlus' "costs," i.e., payments to third-party providers, from the total payments made by OES to SeniorsPlus; that the terms "cost settling" or "cost based" are different from "cost sharing;" that "cost sharing" refers to the sharing of costs between or among multiple revenue sources; that DHHS's use of the wrong methodology resulted in an erroneous calculation of $670,645 in overpayments; and that the 2008 contract and a

2012 contract for the same services were settled using a methodology other than "cost settling." (Pet'r Offer of Proof ¶¶ n-p, r, t-z.)

The hearing officer clearly relied on extrinsic evidence submitted by DHHS in interpreting the term "cost sharing." It was unfair and erroneous for the hearing officer to deny SeniorsPlus an opportunity to present its own extrinsic evidence regarding the meaning of "cost sharing." Furthermore, the anticipated testimony set forth in SeniorsPlus' offer of poof is clearly material to what the parties intended when the 2009 contract was negotiated. Because DHHS hearings do not observe strict rules of evidence and because DHHS's Hearing Regulations state that any evidence "which may reasonably be construed as relevant" shall be admitted, the hearing officer should have allowed SeniorsPlus to offer evidence regarding the parties' intent and the meaning of the term "cost sharing" in the 2009 contract.[5] *See* 10-144 C.M.R. ch. 1, § VII (A)(4).

Moreover, the anticipated testimony and evidence set forth in the offer of proof is clearly necessary to the court's eventual decision on SeniorsPlus' petition pursuant to Rule 80C, particularly whether the hearing officer committed an error of law in interpreting the 2009 contract, whether the hearing officer's interpretation of "cost sharing" was supported by substantial evidence in the record, and whether the decision was arbitrary, capricious, or an abuse of discretion. (Pet. ¶¶ C-E); *see Guar. Tr. Life Ins. Co.*, 2013 ME 102, ¶ 16, 82 A.3d 121; 5 M.R.S. § 11007(4)(C).

Because the additional evidence is material to the issues presented in the review, but was erroneously disallowed, and because the additional evidence is necessary to the court's review of SeniorPlus' Rule 80C petition, this matter must be remanded to DHHS for the taking of additional evidence.

---

[5] Again, the court expresses no opinion whether some of the evidence SeniorsPlus sought introduce may still be excluded as "unduly repetitious." *See* 5 M.R.S. ¶ 9057(2); 10-144 C.M.R. ch. 1, § VII (A)(2).

## IV. CONCLUSION

Petitioner SeniorsPlus' motion take additional evidence is granted.

The court hereby orders the following:

1. This matter is remanded to the Maine Department of Health and Human Services for the taking of additional evidence by the agency.

2. DHHS shall permit SeniorsPlus to obtain discovery of all emails sent by, or received by, the DHHS employees previously identified by SeniorsPlus between April 1, 2008 and March 31, 2009, referencing any DHHS contract with SeniorsPlus, or any amounts or payments claimed by or paid to Seniors under any contract with DHHS that were not previously produced.

3. DHHS shall conduct further hearing to allow SeniorsPlus to present witnesses and evidence regarding the following: (a) whether certain payments made during the 2009 fiscal year were reimbursement for services provided during the 2008 fiscal year; (b) whether the parties who negotiated the 2009 contract did not intend for the 2009 contract to be settled using "cost settling" or "cost-based" methodology; and (c) whether SeniorsPlus continued to provide services during the 2008 fiscal year after contract funds had been exhausted in reasonable reliance on promises by DHHS officials that SeniorsPlus would be paid from 2009 fiscal year funds.

4. After taking the additional evidence, DHHS may modify its findings and decisions, and shall file with the court, to become part of the record for review, the additional evidence and any new findings or decision.

5. This matter is stayed pending the filing of additional evidence and any new findings or decision by DHHS.

6. Following the filing of additional evidence and any new findings or decision by DHHS, the court shall hold a status conference with the parties to establish,

if necessary, the briefing schedule for Petitioner SeniorPlus's Rule-80C appeal of final agency action.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 1/23/17

MaryGay Kennedy
Justice, Superior Court